# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM JEPSEN, individually and on behalf of a class of similarly situated individuals, | ) ) ) | |
| *Plaintiff,* | ) ) | No. 08-CV-5508 |
| v. | ) ) | Honorable Wayne R. Andersen |
| CLUB TEXTING, INC., a New York corporation, JOONBUG PRODUCTIONS, INC., a New York corporation, *Defendants.* | ) ) ) ) ) | |

## STIPULATION OF SETTLEMENT

This Stipulation Of Settlement ("Stipulation") is entered into by and among Plaintiff William Jepsen and Club Texting, Inc. ("Club Texting") (together, the "Parties"). (Except as otherwise specified, defined terms shall have the meanings set forth in the Definitions Section of this Stipulation.) This Stipulation is intended by the Parties to fully, finally and forever resolve, discharge and settle all Released Claims, subject to the terms and conditions herein and subject to approval of the Court.

## RECITALS

**A.** On September 25, 2008, Plaintiff brought a putative class action against Defendants in the United States District Court for the Northern District of Illinois, Eastern Division, which was designated case No. 08-CV-5508. (Dkt. No. 1.) Plaintiffs alleged that Defendants engaged in a marketing campaign in which unsolicited text message advertisements were sent to the cellular telephones of thousands of consumers nationwide. Plaintiffs alleged a single cause of action against Defendants for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA").

**B.** Defendant Club Texting filed its Answer to the complaint on March 12, 2009 (Dkt. No. 15), denying the substantive allegations in the complaint.

**C.**     On May 19, 2009, Plaintiffs moved the Court pursuant to Federal Rule of Civil Procedure 23 to certify a class consisting of all persons residing in the United States who received one or more unauthorized or unsolicited text message advertisements transmitted by Defendants. (Dkt. No. 34.)

**D.**     On May 20, 2009 Defendant JoonBug filed its Motion to Dismiss Plaintiffs' Action. (Dkt. No. 36.)  On May 26, 2009, the Court took Plaintiff's Motion to Certify Class under advisement, and the Court ordered a stay on discovery until JoonBug's Motion to Dismiss was ruled upon. (Dkt. No. 40.)

**E.**     On June 26, 2009, the Parties filed a Joint Motion to Stay Briefing and Refer Case For a Settlement Conference. (Dkt. No. 43.)  On June 30, 2009, the case was referred to the Honorable Michael T. Mason for the purpose of holding a settlement conference. (Dkt. No. 45.)

**F.**     On October 14, 2009, William Jepsen, Shahriyar Neman, and counsel for the Parties met in person in Chicago, Illinois and participated in the Settlement Conference which Judge Mason presided over.  With the assistance of Judge Mason, the Parties were able to reach an agreement in principal. (Dkt. No. 49.)  The Parties agree that the Action was resolved in good faith, and that this Stipulation confers substantial benefits upon the Parties. The Parties engaged in arms-length negotiations, which were presided over by Judge Mason.

**G.**     At all times, each of the Defendants have denied and continue to deny any wrongdoing whatsoever, and they have denied and continue to deny that either of them committed, threatened, or attempted to commit, any of the wrongful acts or violations of law or duty that are alleged in the Action, and instead contend that they have acted properly. Defendants also deny: (1) all charges of wrongdoing or liability against them arising out of any conduct, statements, acts or omissions alleged in the Action; and (2) that Plaintiffs or the Settlement Class are entitled to any form of damages based on the conduct alleged in the Action.  In addition, Defendants maintain that they have meritorious defenses to the claims alleged in the Action and were prepared to vigorously defend the Action.  Nonetheless,

taking into account the uncertainty and risks inherent in any litigation, Defendants have concluded that further defense of the Action would be burdensome and expensive, and that it is desirable and beneficial to fully and finally settle and terminate the Action in the manner and upon the terms and conditions set forth in this Stipulation.

**H.**     Plaintiff believes that the claim asserted in the Action has merit.  Nonetheless, Plaintiffs and Class Counsel recognize and acknowledge the expense and length of continued prosecution of the Action against Defendants through trial and any subsequent appeals. Plaintiff and Class Counsel have also taken into account the uncertain outcome and risks of any litigation, especially in complex actions, as well as the difficulties and delays inherent in such litigation.  Therefore, Plaintiff and Class Counsel believe that it is desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice, and barred pursuant to this Stipulation.  Based on their evaluation, Class Counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable, and adequate to the Settlement Class, and that it is in the best interests of the Settlement Class to settle the claims raised in the Action pursuant to the terms and provisions of this Stipulation.

WHEREFORE, IT IS HEREBY STIPULATED AND AGREED by the Parties that the Action and the Released Claims as against the Released Parties shall be finally and fully compromised, settled, and resolved on the terms and conditions set forth in this Stipulation, as a good faith, fair, reasonable, and adequate settlement.

## AGREEMENT

1.     **DEFINITIONS**

As used in this Stipulation, the following terms have the meanings specified below:

**1.1**     **"Action"** means the putative class action, designated as case No. 08-CV-5508, brought by Plaintiff against Defendants in the United States District Court for the Northern District of Illinois.

**1.2**     **"Approved Claim"** means a Claim Form submitted by a Settlement Class Member that is (a) timely and submitted in accordance with the directions as indicated on the

3

Claim Form and the provisions of this Stipulation, (b) provides a cellular telephone number that according to Club Texting's databases received at least one Fly Society Text Message, and (c) signed by the Settlement Class Member, physically or electronically.

    **1.3**     **"Claim Form"** means the form, as approved by the Court, that is to be completed by Settlement Class Members who wish to file a claim for a Settlement Benefit, which shall be substantially similar to Exhibit A attached hereto. The Claim Form shall be available in both paper and electronic format, and will require each Settlement Class Member to identify his or her name, the cellular number of the phone that received the Fly Society Text Message advertisement(s) from Defendants and/or their affiliates, the Settlement Class Member's address, and a statement, subject to penalty of perjury, by the Settlement Class Member that he or she received said text message(s) without prior express consent.

    **1.4**     **"Claims Administration Expenses"** means all expenses incurred by the Settlement Administrator in performing the services it is obligated to perform under this Agreement and the contract it shall enter into to perform such services, including the implementation of the Notice Plan, administration of the settlement, and the processing of Claim Forms submitted by Settlement Class Members pursuant to this Stipulation.

    **1.5**     **"Class Counsel"** means Ryan D. Andrews and Rafey S. Balabanian of KamberEdelson, LLC.

    **1.6**     **"Class Representative"** means William Jepsen.

    **1.7**     **"Claims Deadline"** means the date by which all Claim Forms must be either postmarked or, in the case of electronic submission, received to be considered timely and valid, and shall be set as the date forty-five (45) days after entry of Final Approval. The Claims Deadline shall be clearly set forth in all forms of Notice, the Claim Form, and the order of Final Approval.

    **1.8**     **"Court"** means the United States District Court for the Northern District of Illinois, Eastern Division.

**1.9** **"Defendants"** means Club Texting, Inc., a New York corporation ("Club Texting"), and JoonBug Productions, Inc., a New York corporation ("JoonBug").

**1.10** **"Defendants' Counsel"** means Ian H. Fisher of Schopf & Weiss LLP.

**1.11** **"Effective Date"** means the date, if any, on which the Final Approval entered pursuant to this Stipulation becomes final and not subject to appeal under the applicable law or, in the event of a timely appeal from the entry of the Final Approval, the date on which such appeal is resolved affirming the Final Approval in all material respects and the judgment is not subject to further judicial review. If no objections to Final Approval are filed, then the Effective Date shall be the date of entry of the order of final judgment.

**1.12** **"Fairness Hearing"** means the hearing before the Court where the Parties will request Final Approval and an order of dismissal with prejudice to be entered by the Court approving the Stipulation, the Fee Award, and the incentive award to the Class Representative.

**1.13** **"Fee Award"** means the amount of attorneys' fees and reimbursement of expenses awarded by the Court to Class Counsel.

**1.14** **"Final Approval"** means the order of final judgment to be entered by the Court approving this Stipulation, without modifications that are unacceptable to the Plaintiffs or Defendants, as fair, adequate and reasonable in accordance with applicable jurisprudence, confirming the certification of the Settlement Class, and issuing such other findings and determinations as the Court or the Parties deem necessary and appropriate to effectuate the terms of this Stipulation.

**1.15** **"Fly Society Text Message"** means the allegedly unsolicited text message advertisements to Plaintiffs initiated by a certain nightclub promoter using the name "Fly Society" (or similar name) that used the business services of Club Texting and/or its affiliates. Examples of the text of the messages at issue are listed on Exhibit B.

**1.16** **"Notice Plan"** means the proposed plan of disseminating Notice to Settlement Class Members of the proposed Stipulation and the Fairness Hearing.

**1.17** **"Opt-out/Objection Deadline"** means the date by which an opt-out must be postmarked or an objection must be filed, which shall be designated as forty-five (45) days after the date that Notice to the Settlement Class is commenced, or such other date that is approved by the Court and stated in the Notice.

**1.18** **"Person"** means any individual, corporation, trust, partnership, Limited Liability Company or other legal entity and their respective predecessors, successors or assigns.

**1.19** **"Plaintiffs"** means William Jepsen and the Settlement Class.

**1.20** **"Preliminary Approval"** means the Court's certification of the Settlement Class for settlement purposes, and the Court's approval of the Stipulation, the Notice, Notice Plan, and Claim Form.

**1.21** **"Preliminary Approval Order"** means the order preliminarily approving the Stipulation and directing Notice thereof to the Settlement Class.

**1.22** **"Released Claims"** means any and all claims, demands, liabilities, rights, causes of action, contracts, agreements, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees, obligations, and/or Unknown Claims, whether in law or in equity, accrued or unaccrued, direct, derivative, individual, representative, or in any other capacity, based on the TCPA or other federal, state, local, statutory or common law or any other law, rule, or regulation, against any of the Released Parties, arising out of the facts, transactions, events, occurrences, acts, disclosures, statements, misrepresentations, omissions or failures to act regarding the alleged transmission of Fly Society Text Message advertisements by Defendant Club Texting and/or its affiliates to the Settlement Class Members that were or could have been alleged or asserted in the Action, belonging to the Releasing Parties.

**1.23** **"Released Parties"** means Defendants and any and all of their present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parents, subsidiaries, associates, affiliates, employers, employees, agents, consultants, independent

6

contractors, insurers, directors, managing directors, officers, partners, principals, members, shareholders, attorneys, accountants, financial and other advisors, investment bankers, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and Persons, firms, trusts, corporations, officers, directors, and any other individuals or entities in which either or both Defendants have a controlling interest, to which either or both Defendants are related, or with which either or both Defendants are affiliated.

      **1.24**    **"Releasing Parties"** means Plaintiffs and any Person claiming by or through Plaintiffs as his or her spouse, parent, child, heir, associate, co-owner, attorney, agent, administrator, devisee, predecessor, successor, assignee, representative of any kind, shareholder, partner, director, employee, or affiliate.

      **1.25**    **"Settlement Administrator"** means the firm Strategic Claims Services selected by the Parties and approved by the Court to oversee the distribution of Notice, the Notice Plan, the processing of Claim Forms and requests submitted by the Settlement Class, and payment of Approved Claims to the Settlement Class Members as set forth in this Stipulation.

      **1.26**    **"Settlement Benefits"** means the benefits a Settlement Class Member may receive pursuant to this Stipulation.

      **1.27**    **"Settlement Class"** means all Persons residing in the State of Illinois who, from September 25, 2004, until the date that the Preliminary Approval Order is entered, received a Fly Society Text Message transmitted by Club Texting and/or its affiliates that was sent without such Person's prior express consent.

      **1.28**    **"Settlement Class Members"** means Persons who fall within the definition of the Settlement Class as set forth above and who have not at any time submitted a valid request for exclusion.

      **1.29**    **"Special Master"** means the neutral party agreed upon by the Parties.

**1.30** **"Stipulation"** means this settlement agreement contemplated between the Parties and all exhibits attached hereto.

**1.31** **"Unknown Claims"** means claims that could have been raised in this Action that Plaintiffs or other Persons or entities whose claims are being released do not know or suspect to exist, which, if known may affect their agreement to release the Released Parties and/or the Released Claims, and may affect their decision to agree, object, or not object to the Stipulation. Upon the Effective Date, Plaintiffs and all other Persons and entities whose claims are being released shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, Plaintiffs and all other Persons and entities whose claims are released, also shall be deemed to have waived all provisions, rights, and benefits conferred by any law of any state or territory of the United States, principle of common law, or the law of any jurisdiction outside of the United States that is similar or equivalent to § 1542 of the California Civil Code. Plaintiffs acknowledge that they may discover facts in addition to or distinct from those facts that they know or believe to be true at the time of the Effective Date, however, it is Plaintiffs' intention to finally and forever settle and release all Released Claims and Released Parties, notwithstanding any prospective claims they may have.

**2.     SETTLEMENT RELIEF**

**2.1     Injunctive Relief.** Club Texting has agreed that it shall, as soon as practicable, but in no even later than the Effective Date, institute the following:

(a)     Club Texting consents to the entry of an injunction requiring it to adhere to the Consumer Best Practices Guidelines promulgated by the Mobile Marketing

Association ("MMA"), in effect as of the Effective Date and as amended from time to time. (*See, e.g.,* MMA's Consumer Best Practices Guidelines, Version 4.0, available at www.mmaglobal.com/bestpractices.pdf, last updated July 1, 2009).

      (b)    Club Texting consents to the entry of an injunction requiring all users of its text messaging services to represent or warrant that they have obtained the prior express consent of each intended recipient of text message(s) prior to permitting those users to utilize Club Texting's services. Such representation or warranty may be made electronically.

      (c)    Club Texting consents to the entry of an injunction requiring that any Person using Club Texting's text messaging services for the first time must first view all of Club Texting's terms and conditions and subsequently agree to comply with such terms and conditions. Club Texting agrees that its terms and conditions must be clearly stated on its webpage in a manner where new users are forced to view such terms and conditions prior to their first use of Club Texting's text messaging services. In addition, Club Texting's terms and conditions must clearly state that Club Texting's services may be subject to the TCPA, and that the TCPA prohibits unsolicited voice and text calls to consumers' cellular telephones without prior express consent. Furthermore, Club Texting agrees that all of its users must enter an access code, which Club Texting shall provide, in order to indicate that such users agree to Club Texting's terms and conditions.

      (d)    Club Texting consents to the entry of an injunction that requires it to include as a term of use for its text messaging services a requirement that each user of Club Texting's services will include opt-out instructions to the recipient of any text message, which shall conform to the general rules of the MMA governing opt-outs and describe in detail how to opt-out of receiving future text messages, such as texting the word "STOP" in a reply text message. Club Texting further agrees to require as a term of use for its text messaging services that opt-out instructions be included in at least every fifth text message sent to consumers by the users of its text messaging services.

**2.2    Payments.**

(a)    Settlement Class Members shall have until the Claims Deadline to submit an Approved Claim.  Club Texting agrees to pay within forty-five (45) days of the Claims Deadline sixty-seven dollars and fifty cents ($67.50) to each Settlement Class Member who submits an Approved Claim.

(b)    All payments issued to Settlement Class Members will be made via check that will state on the face of the check that it will expire and become null and void unless cashed within ninety (90) days of the date of issuance.  To the extent that a check issued to a Settlement Class Member is not cashed within ninety (90) days of the date of issuance, such funds shall, subject to approval of the Court, be directed to Charity: Water, a section 501(c)(3) non-profit organization located in New York, NY, as an appropriate *cy pres* recipient.  Charity: Water's mission is to bring clean and safe drinking water to the people of developing nations.  (*See* www.charitywater.org)

(c)    Club Texting agrees that it shall supply the Settlement Administrator with sufficient funds at all times so that the Settlement Administrator is able to pay all Approved Claims in a timely manner, pursuant to this Stipulation.

(d)    Club Texting agrees to pay all Claims Administration Expenses.

**3.    RELEASES**

**3.1**    Upon the Effective Date, Plaintiffs shall be deemed to have fully, finally, and forever released, relinquished and discharged all Released Claims against all Released Parties.

**4.    NOTICE TO THE CLASS**

**4.1**    Upon entry of the Preliminary Approval Order, the Settlement Administrator shall cause Notice, which shall describe the Fairness Hearing and the terms of the Stipulation, to be distributed to all potential Settlement Class Members.  The Notice shall comport with Due Process and shall be effectuated pursuant to the Notice Plan described below.

**4.2**     The Notice Plan shall include:

(a)     **Direct Notice**.  Within ten (10) days of the entry of Preliminary Approval Order, Club Texting shall provide Class Counsel with any documents in Club Texting's  possession or control that contain electronic or U.S. Mail address for potential Settlement Class Members.  Class Counsel shall provide such electronic or U.S. Mail addresses to the Settlement Administrator in electronic form.  Within thirty-five (35) days of the receipt of such addresses, Notice substantially in the form attached as Exhibit C, and an accompanying Claim Form or electronic link to said Claim Form will be sent by the Settlement Administrator to such potential Settlement Class Members by either email or First Class U.S. Mail.

(b)     **Newspaper Publication**.  Newspaper publication shall be made by the Settlement Administrator, who shall purchase a one-day advertising space, at minimum 1/8th page in size, in the Chicago Reader.  The newspaper publication shall be published within forty five (45) days following the entry of the Preliminary Approval Order.  The newspaper publication shall be substantially in the form of Exhibit D attached hereto.

(c)     **Internet Publication**.  Within seven days following the entry of the Preliminary Approval Order, Notice shall be provided on a website at a domain name mutually agreed upon by the Parties, created by Club Texting (or, at Club Texting's option, by the Settlement Administrator), subject to Class Counsel's approval.  If Club Texting creates the website, it shall transfer complete control of such website to the Settlement Administrator after creation and before Notice to the Settlement Class commences.  The website shall be administered by only the Settlement Administrator.  Notice by internet publication shall include the ability to file Claim Forms online.  The internet publication shall be substantially in the form of Exhibit E attached hereto.

(d)     **Press Release**.  Upon Preliminary Approval of this Stipulation, Class Counsel may prepare and distribute a press release to local, national, and syndicated news organizations discussing the Stipulation.  The press release shall be subject to the approval of

Club Texting's counsel. Club Texting grants such approval for the draft press release substantially in the form attached as Exhibit F hereto.

       (e)    **CAFA Notice.** Pursuant to 28 U.S.C. § 1715, not later than ten (10) days after the proposed settlement is filed, Club Texting and Joonbug shall serve upon the Attorney General of the State of Illinois and the Attorney General of the United States notice of the proposed settlement, which shall include (1) a copy of the Complaint and all materials filed with the Complaint or notice of how to electronically access such materials; (2) notice of all scheduled judicial hearings in the Action; (3) all forms of Notice to the Settlement Class; and (4) a copy of this Stipulation. If feasible, the Defendants shall serve upon the Attorney General of the State of Illinois the names of class members who reside in the State of Illinois and the share of the claims of such members to the entire settlement, or if not feasible, a reasonable estimate of the number of class members residing in the State of Illinois and the estimated proportionate share of the claims of such members to the entire settlement.

      **4.3**    All forms of Notice shall advise the Settlement Class of their rights, including the right to opt-out and the right to object. The Notice shall provide that any objection to this Stipulation, and any papers submitted in support of said objection, shall be received by the Court at the Fairness Hearing, only if, on or before a date approved by the Court and to be specified in the Notice, the Person(s) making the objection shall: (a) file notice of their intention to object and such documents that they propose to submit at the Fairness Hearing with the Clerk of the Court; and (b) send copies of such documents via prepaid first class U.S. mail to both Class Counsel and Defendants' Counsel on or before the Opt-out/Objection Deadline.

      **4.4**    Any Settlement Class Member who intends to object to this Stipulation must include his or her name and address, all arguments, citations, and evidence supporting the objection (including copies of any documents relied upon), a statement that he or she is a Settlement Class Member, and a statement indicating whether he or she intends to appear at

the Fairness Hearing with or without counsel. Any Settlement Class Member who fails to timely file and serve a written objection and notice of his or her intent to appear at the Fairness Hearing in accordance with the terms stated in the Notice, shall not be permitted to object to the Stipulation at the Fairness Hearing, and shall be barred from seeking any review of the Settlement Agreement by appeal or other means.

  **4.5** A Settlement Class Member may opt-out of the Settlement Class by the Opt-out/Objection Deadline. In order to exercise the right to opt-out, a Settlement Class Member must timely send a request for exclusion to the Settlement Administrator. Except the Settlement Class Members who have properly opted out, all Settlement Class Members shall be bound by the Stipulation and Final Approval. Any Settlement Class Member who elects to opt-out shall: (i) not be bound by the Final Approval; (ii) not be entitled to relief under this Stipulation; (iii) not gain any rights by virtue of this Stipulation; and (iv) shall not be entitled to object to any aspect of this Stipulation. The Person(s) requesting exclusion must personally sign the exclusion request. So called "mass" or "class" opt-outs shall not be allowed. To be valid, an opt-out or exclusion must be sent by postage prepaid first class U.S. mail and postmarked by the date specified in the Notice.

**5.**  **SETTLEMENT ADMINISTRATION**

  **5.1** The Settlement Administrator shall administer the relief provided by this Stipulation in a reasonable, responsive, cost effective, and timely manner. The Settlement Administrator shall maintain reasonably detailed records of its activities related to this Stipulation, shall maintain all such records as are required by applicable law and in accordance with its normal business practices. Such records shall be made available to Class Counsel and Defendants' Counsel upon request. The Settlement Administrator shall also provide reports and other information to the Court as the Court may require. Without limiting the foregoing, the Settlement Administrator shall:

    (a) Receive opt-out forms and other requests from Settlement Class Members, and provide Class Counsel and Defendants' Counsel with copies thereof within

five (5) days of the deadline for submission of such forms. If the Settlement Administrator receives any opt-out forms or other requests from Settlement Class Members after the deadline for the submission of the forms and other requests, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Defendants' Counsel.

      (b)    Provide bi-weekly or other periodic reports, as the Court may determine, to Class Counsel and Defendants' Counsel, as shall be provided in the contract entered into by Defendants and the Settlement Administrator, including without limitation, reports regarding the number of Claim Forms received, the amount of Settlement Benefits sought, the number of Approved Claims, and the amount and description of the Claim Forms rejected in whole or in part by the Settlement Administrator.

      (c)    Make available for inspection by Class Counsel and/or Defendants' Counsel the Claim Forms and supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

    **5.2**    The Settlement Administrator may reject Claim Forms, or any part thereof, where there is evidence of abuse or fraud, including where the Claim Form fails to provide a cellular telephone number that according to Club Texting's databases received at least one Fly Society Text Message.

    **5.3**    Both Defendants' Counsel and Class Counsel shall have the right to challenge the approval or rejection of a Claim Form submitted by a Settlement Class Member. The Settlement Administrator shall follow any agreed decisions of the Defendants' Counsel and Class Counsel. To the extent Defendants' Counsel and Class Counsel are not able to agree on the disposition of a challenge, the Special Master shall timely decide such challenge. The Parties agree that the Settlement Administrator shall thereafter follow the decision of the Special Master resulting from any such challenge.

    **5.4**    In the exercise of their duties outlined in this Stipulation, both the Settlement Administrator and the Special Master shall have the right to reasonably request additional information from the Parties or any Settlement Class Member.

**5.5**    The hearing on Final Approval shall be ninety (90) days after the Attorney General receives the preliminarily approved settlement agreement and other required materials pursuant to 28 U.S.C. § 1715, or other time as the Court shall require.

**6.    TERMINATION OF SETTLEMENT**

**6.1**    The named Plaintiff in this Action, William Jepsen, on behalf of the Settlement Class, and/or Defendant Club Texting shall have the right to terminate this Stipulation by providing written notice of his election to do so ("Termination Notice") to all other Parties hereto within ten (10) days of any of the following events: (i) the Court's refusal to grant Preliminary Approval in any material respect; (ii) the Court's refusal to grant Final Approval in any material respect; and/or (iii) the Court of Appeals or the Supreme Court modifies or reverses the Final Approval in any material respect.

**7.    PRELIMINARY APPROVAL ORDER**

**7.1**    Promptly after the execution of this Stipulation, Class Counsel and Defendants' Counsel shall jointly submit this Stipulation together with all of the exhibits attached hereto to the Court, and Class Counsel shall move the Court for Preliminary Approval, certification of a class for settlement purposes only, and entry of the Preliminary Approval Order.  The Preliminary Approval Order shall set the date for the Fairness Hearing and shall approve the Notice and Claim Form for distribution in accordance with the Notice Plan.

**7.2**    After Notice is given, the Parties shall request and obtain Final Approval from the Court.  The Final Approval shall:

(a)    Find that the Court has personal jurisdiction over all Settlement Class Members and that the Court has subject matter jurisdiction to approve this Stipulation, including all exhibits hereto;

(b)    Approve the Stipulation as fair, reasonable, adequate, and in the best interests of the Settlement Class;

(c)     Direct the Parties, Class Counsel, and Defendants' Counsel to implement the Stipulation according to its terms and provisions;

(d)     Declare the Stipulation to be binding on, and have *res judicata* and preclusive effect on all pending and future lawsuits or other proceedings maintained by or on behalf of all other Settlement Class Members, as well as their heirs, executors and administrators, successors and assigns;

(e)     Find that the Notice and the Notice Plan implemented pursuant to this Stipulation: (1) constitute notice that is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, their right to object to or exclude themselves from the proposed Settlement, and their right to appear at the Fairness Hearing; (2) are reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (3) meet all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause, and the rules of the Court;

(f)     Find that Plaintiff and Class Counsel adequately represented the Settlement Class for purposes of entering into and implementing the Stipulation;

(g)     Dismiss the Action on the merits and with prejudice, without fees or costs to any of the Parties, except as provided in this Stipulation;

(h)     Incorporate the Released Claims for the Released Parties set forth above, and make such releases effective as of the date of Final Approval;

(i)     Authorize the Parties, without further approval of the Court, to agree to adopt amendments, modifications, and expansions of the Stipulation and all related documents, including all exhibits, as shall be consistent in all material respects with the Final Approval, and as do not limit the rights of Settlement Class Members, where all Parties agree;

(j)     Without affecting the finality of the order of Final Approval for purposes of appeal, set forth that the Court shall retain jurisdiction as to all matters relating to

administration, enforcement, interpretation, and execution of the Stipulation and the Final Approval, and for any other necessary purpose; and

        (k)    Incorporate any additional provisions, as the Court deems necessary and just.

## 8. CLASS COUNSEL'S ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; INCENTIVE AWARD

**8.1    Fee Award.** Club Texting will not oppose Class Counsel's request, subject to Court approval, for an amount of up to sixty thousand dollars ($60,000) for attorneys' fees and reimbursement of expenses. Club Texting agrees that this amount is fair and reasonable and will not object to or otherwise challenge Class Counsel's application for reasonable attorneys' fees and for reimbursement of costs and other expenses if Class Counsel's application does not exceed said amount. Class Counsel has, in turn, agreed not to seek more than this amount from the Court.

**8.2    Payment of the Fee Award.** Notwithstanding any appeal, objection, or challenge to the Court's Final Approval, including the Fee Award, Club Texting shall pay, subject to Section 9.2 of this Stipulation, the Fee Award to Class Counsel in the following manner: 66.667% of the Fee Award within ten (10) days of the Effective Date via wire transfer and the remaining 33.333% of the Fee Award ninety (90) days thereafter.

**8.3    Incentive Award.** In addition to any Settlement Benefit to which the Class Representative, William Jepsen, may be entitled under this Stipulation, and in recognition of his efforts on behalf of the Class, the Class Representative shall be awarded five thousand dollars ($5,000) as appropriate compensation for his time and effort serving as the Class Representative in this litigation, provided that the Court approves such payment. Club Texting shall pay, subject to Section 9.2 of this Stipulation, such amount via check to the Class Representative, such check to be sent care of Class Counsel via First Class U.S. Mail, within ten (10) days of the Effective Date.

9.      **CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION**

**9.1**      If this Stipulation is not approved by the Court, or the Stipulation is terminated or fails to become effective in accordance with its terms, this Stipulation shall be terminated, subject to Section 9.2, unless Plaintiff Jepsen, Club Texting, Class Counsel, and Defendants' Counsel have full knowledge of such defect(s) and with such knowledge mutually agree in writing to proceed with the Stipulation. If any of the Parties is in material breach of the terms of this Stipulation, any of the opposing Parties, provided that they are in substantial compliance with the terms of this Stipulation, may terminate this Stipulation on notice to all of the Parties.

**9.2**      If this Stipulation is terminated or fails to become effective for any of the reasons set forth in Section 9.1, the Parties shall be restored to their respective positions in the Action as of the date of signing this Stipulation. In such event, Final Approval granted by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.

10.      **MISCELLANEOUS PROVISIONS**

**10.1**      The Parties acknowledge that it is their intent to carry out this Stipulation, and to agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary and to exercise their best efforts to effectuate and implement all terms and conditions of this Stipulation. Class Counsel and Defendants' Counsel agree to cooperate with one another in seeking Preliminary Approval and Final Approval from the Court, and to promptly execute all documentation that may be reasonably required to achieve such result.

**10.2**      The Parties intend this Stipulation to be a final and complete resolution of all disputes between them with respect to the Released Claims. Accordingly, the Parties agree to not assert in any forum that the Action was brought or defended in bad faith or without a reasonable basis.

**10.3** Whether the Effective Date occurs or this Stipulation is terminated, this Stipulation and any act performed or document executed pursuant to or in furtherance of this Stipulation:

(a)     Shall not be used, offered, or received against the Released Parties, or each or any of them, as an admission, concession or evidence of, the validity of any Released Claim, the truth of any fact alleged by Plaintiffs, the deficiency of any defense that has been or could have been asserted in the Action, or of any alleged wrongdoing, liability, negligence, or fault of any of the Released Parties;

(b)     Shall not be used, offered, or received against Plaintiff or any Settlement Class Member as an admission, concession, or evidence of, the infirmity or strength of any claims raised in the Action, the truth or falsity of any fact alleged by Defendants, or the availability or lack of availability of meritorious defenses to the claims raised in the Action;

(c)     Shall not be used, offered or received against any of the Released Parties, as an admission or concession with respect to any liability, negligence, fault or wrongdoing as against any Parties to the Stipulation, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.  However, this Stipulation and any acts performed and/or documents executed in furtherance of may be used in any proceedings as may be necessary to effectuate the provisions of this Stipulation. Furthermore, if this Stipulation is approved by the Court, any of the Parties or Released Parties may use this Stipulation and/or Final Approval in any action brought against such parties to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar, reduction, or any other theory of claim preclusion or issue preclusion;

(d)     Shall not be construed as an admission or concession by any of the Parties that the consideration to be given hereunder represents an amount equal to, less than, or greater than the amount that could have or would have been recovered after trial; and

19

(e)     Shall not be construed as or received in evidence as an admission or concession against any of the Parties, that any of Plaintiffs' claims are with or without merit or that damages recoverable in the Action would have exceeded or would have been less than any particular amount.

**10.4**     The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

**10.5**     The waiver by one party of any breach of this Stipulation by any other party shall not be deemed as a waiver of any other prior or subsequent breaches of this Stipulation.

**10.6**     All of the Exhibits to this Stipulation are material and integral parts thereof and are fully incorporated herein.

**10.7**     This Stipulation and its Exhibits set forth the entire agreement and understanding of the Parties with respect to the matters set forth herein, and supersede all prior negotiations, agreements, arrangements and undertakings with respect to the matters set forth herein.  No representations, warranties, or inducements have been made to any of the Parties concerning this Stipulation or its Exhibits other than the representations, warranties, and covenants contained herein.  This Stipulation may be amended or modified only by a written instrument signed by all Parties, their authorized agents, or their respective successors-in-interest.

**10.8**     Except as otherwise provided herein, each Party shall bear its own costs.

**10.9**     Plaintiffs represent and warrant that they have not assigned any claim or right or interest therein as against the Released Parties to any other Person or Party.

**10.10**   Class Counsel and Defendants' Counsel, or other Person(s) executing this Stipulation and any of its Exhibits, warrants and represents that they have the full authority to do so.

**10.11**   This Stipulation may be executed in one or more counterparts.  All executed counterparts shall be deemed to be one and the same instrument provided that counsel for the

Parties to this Stipulation all exchange original signed counterparts. A complete set of original executed counterparts shall be filed with the Court.

      **10.12**  This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

      **10.13**  This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed, delivered, and wholly performed in the State of Illinois, and the rights and obligations of the Parties to this Stipulation shall be construed and enforced in accordance with and governed by, the internal, substantive laws of the State of Illinois without giving effect to that State's choice of law principles.

      **10.14**  This Stipulation has been prepared by Class Counsel and Defendants' Counsel for all Parties. All Parties have contributed substantially and materially to the preparation of this Stipulation, and it shall not be construed more strictly against one party than another.

      IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys.

Dated: January 5, 2010.

William Jepsen,
individually and on behalf of a
class of similarly situated individuals,
by their attorneys:

Ryan D. Andrews
Rafey S. Balabanian
KamberEdelson, LLC
350 N. LaSalle Street, Suite 1300
Chicago, Illinois  60645

Club Texting, Inc.
and JoonBug Productions, Inc.,
by their attorneys:

Ian H. Fisher
Schopf & Weiss LLP
One South Wacker Drive, 28th Floor
Chicago, Illinois 60606

21

# EXHIBIT A

## *JEPSEN v. CLUB TEXTING, INC.* SETTLEMENT CLAIM FORM

Return this Claim Form to: Settlement Administrator, 600 N. Jackson St., Media, PA 19063. Questions, visit www.[website].com or call 1-866-354-3015

### DEADLINE: THIS CLAIM FORM MUST BE SUBMITTED OR POSTMARKED BY [CLAIMS DEADLINE]

**Instructions:** Each person who wants to receive a cash payment of $67.50 under the Settlement must complete either a paper or electronic claim form. Everyone must provide the information requested in the "Claimant Information" section and verify under penalty of perjury by checking the appropriate boxes that they received at least one text message without having given prior express consent to receive texts promoting Chicago-area nightclubs events that are the subject of the Settlement. For a list of such messages, please visit www.[website].com. *You can only submit one claim form per phone number and will receive only one payment regardless of the number of covered text messages that you received.* For further information, please visit www.[website].com.

| CLAIMANT INFORMATION* |
|---|

**Name:** _____ _____ _____
      *(First)*                  *(Middle)*              *(Last)*

**Address:** _____
          *(Street)*

_____ _____ _____
*(City)*                       *(State)*         *(Zip Code)*

**Cell Phone Number: (** ___ ___ ___ **)** ___ ___ ___ – ___ ___ ___ ___
(This must be the number that received the unauthorized text messages and will be checked against a list of numbers that received the text message(s) at issue)

**Contact Phone Number: (** ___ ___ ___ **)** ___ ___ ___ – ___ ___ ___ ___
(Please provide a phone number where you can be reached if further information is required)

*All information in this section is required.

| Class Member Verification |
|---|

By submitting this claim form and checking the boxes below, I declare that I believe I am a member of the Settlement Class and that the following statements are true (check each box that applies):

☐ That I am a resident of Illinois and that from September 25, 2004 through [date] I received one or more text messages promoting Chicago-area nightclubs events that are the subject of the Settlement.

☐ That at no time prior to receiving the text message(s) did I provide my express consent to any person or company to send me the text message(s).

    I declare under penalty of perjury that the foregoing is true and correct.

Signature: _____

Executed on
Date: _____

Print Name: _____

Your claim will be submitted to the Settlement Administrator for review, if accepted you will be mailed a check for $67.50. This process takes time, please be patient.

Questions? Visit www.[website].com or Call Class Counsel at 1-866-354-3015

# EXHIBIT B

### How do I know if I am part of the Settlement Class?

To see if you will get money from this settlement, you first have to decide if you are a Class Member. The Court decided that everyone who fits the following description is a Settlement Class Member:

> All persons residing in the State of Illinois who, from September 25, 2004, until [date that the Preliminary Approval Order is entered], received a Fly Society text message transmitted by Club Texting, Inc. and/or its affiliates that was sent without such person's consent.

If you believe you are a Settlement Class Member, you may obtain a claim form by clicking **here**.

If you are still not sure whether you are included, you can ask for help by calling 1-866-354-3015 for more information.

### Fly Society Text Messages

Examples of Fly Society text messages are listed below. If you received one of these text messages and believe that you are a Class Member, please go to the website www.xxxxxxx.com to learn about your legal rights and options in this settlement.

| Subject Line | Body of Text Message |
| --- | --- |
| HIGH FASHION FRIDAYS | TABU TABU |
| WE BOTTLE POPPIN | *HIGH FASHIONFRIDAYS* TONIGHT AT TABU 738 N CLARK.. THE SEXIEST FRIDAY NIGHT PARTY 10-2AM LADIES FREE TO 12AM!!! |
| SHOW THIS TEXT FOR DISCOUNT ADM | FLY SOCIETY PRESENTS "OPIUM" TONIGHT @ BLU CORAL 1265 N MILWAUKEE 10-3AM AND "BLUE MAGIC" @ WET 209 W LAKE 10-5AM |
| | 2NITE SEAN MAC'S CELEB GEMINI AFFAIR@ BLU CORAL 1265 N MILWAUKEE/BODY TAP SUNDAYS FATHER'S DAY BASH @ POLE KATZ 100TH/ HARLEM HOSTED BY TWISTA / PINKY |
| EVERYBODY DISCOUNTED TO 12AM | THE HOTTEST SATURDAY NIGHT PARTY "BLUE MAGIC" @ WET 209 W LAKE 10P-5AM//DRINKS ON US TO 11PM SHOW THIS TEXT FOR DISCOUNT! |
| EVERYBODY DISCOUNTED TO 12AM | THE HOTTEST SATURDAY NITE PARTY "BLUE MAGIC" @ WET 209 W LAKE 10P-5AM/DRINKS ON US TO 11//REPLY 4 RSVP |
| | JOIN FLY SOCIETY / SECRET SOCIETY 2NITE @ TABU 738 N CLARK AS WE BRING YOU THE SEXIEST FRIDAY NIGHT PARTY OF THE SUMMER.. REPLY TO RSVP FOR 1/2 PRICE |
| | 2NITE SEAN MAC'S CELEB GEMINI AFFAIR@ BLU CORAL 1265 N MILWAUKEE+BODY TAP SUNDAYS FATHER'S DAY BASH @ POLE KATZ 100TH/ HARLEM HOSTED BY TWISTA / PINKY |
| **BODY TAP SUNDAYS** | TONITE @ POLE KATZ 100TH / HARLEM 10P-3AM/LAST WAS CRAZY PACKED/SHAME ON U IF U MISS TONITE/WE BROUGHT ATL TO DA CHI *FLY SOCIETY* |

| HAPPY 4TH OF JULY | WE GETTIN IT POPPIN TONITE @ BLU CORAL 1265 N MILWAUKEE 10P-2A/HIGH FASHION FRIDAYS/LADIES DISCOUNTED TO 12A/WE R NOT AT TABU NO MORE |
|---|---|
| *2 HOT PARTIES TONIGHT* | CELEBRITY INDEPENDENCE WEEKEND WE GOT ALL THE STARS @ BLU CORAL 1265 N MILWAUKEE 10-3AM / WET 209 W LAKE 10-5AM $1/2 WITH TEXT |
| DA OFFICIAL TAKE OVER AFTER PAR | HOSTED BY SHAWNNA / GLC 2NITE AT POLE KATZ 7337 W 100TH / HARLEM 10-3A/LADIES 1/2$ TO 12AM *ATL'S NIGHTLIFE IN DA CHI |
| HIGH FASHION FRIDAYS | THE SEXIEST FRIDAY NITE PARTY AT BLU CORAL 1265 N MILWAUKEE 10P-2AM//LADIES FREE TO 11PM/DISCOUNTED TO 12AM//GOOD MUSIC BY DJ ROC |
| EVERYBODY 1/2 $ WITH THIS TEXT | ALL NIGHT TONIGHT AT BLU CORAL 1265 N MILWAUKEE 10-2AM!!! **FLY SOCIETY** |
| **FLY SOCIETY SATURDAY** | PARRISH LEWIS AFTER PARTY *DREAM* 2NITE AT BLU CORAL 1265 N MILWAUKEE 10-3AM//PLUS BLU MAGIC SATURDAY AT WET 209 W LAKE 10-5AM |
| EVERYBODY DISCOUNTED WITH THIS | BODY TAP SUNDAYS 2NITE AT POLE KATZ 7337 W 100TH HARLEM/C0ME PARTY LIKE THEY DO IN ATL /MYKE T-FLY SOCIETY |
| *CELEB NBA PARTY* | DREAM/2NITE @ BLU CORAL 1265 N MILWAUKEE 10-3AM//PART2 BLUE MAGIC @ WET 209 W LAKE 10-5AM THE OFFICIAL AFTER PARTY TO ALL PARTIES!! |
| *CELEB NBA PARTY* | THE #1 CELEBRITY HOT SPOT TONIGHT AT BLU CORAL 1265 N MILWAUKEE 10PM-3AM LADIES FREE TO 11PM//FREE PARKING IN JEWEL'S LOT N THE REAR |
| ATTENTION PLEASE READ | CONFIRMED BULLS AND BEARS PLAYERS ALONG WITH DETROIT PISTONS AT BLU CORAL 2NITE 1265 N MILWAUKEE 10-3AM LADIES 1/2$ TIL 12 |
| NBC TOWER TONIGHT DONT MISS IT! | LABOR DAY WEEKEND JUMP OFF 2NITE AT *THE NBC TOWER* 455 CITY FRONT DR. / ILLINOIS 10-2A LADIES DISCOUNTED TO 12AM! |
| DREAM :: BLU CORAL :: TONIGHT | THE PARTY THATS TAKING OVER SATURDAY NIGHTS::BLU CORAL 1265 N MILWAUKEE 10P-3AM LADIES DISCOUNTED TO 12AM/STRICT DR CODE |
| EVERYBODY DISCOUNTED WITH THIS | DREAM THE HOTTEST SATURDAY NIGHT PARTY//BLU CORAL 1265 N MILWAUKEE 10-3AM LADIES DISCOUNTED TIL 12AM!! |
| Ladies 1/2 price til 12am | Dream :: The Hottest Saturday Night Party :: At Blu Coral 2nite 1265 n Milwaukee 10-3am// Proper Attire required/Free parking |
| EXCLUSIVE FREE EVENT | 2NITE PLUSH MONDAYS @ PLUSH 1104 W MADISON 10P-2A *EVERYONE FREE* SEXY INDIVIDUALS ONLY *PROPER ATTIRE REQUIRED* EAT/DRINK/DANCE |
| *SPECIAL CELEBRITY GUEST 2NITE* | AT THE SEXIEST SAT NIGHT PARTY BLU CORAL 1265 N MILWAUKEE PARTY TIL 3AM/LADIES DISCOUNTED TIL 12AM/ FREE PLUSH MONDAYS |

| | |
|---|---|
| .::ARE YOU VIP::. | TONIGHT PLUSH MONDAYS AT PLUSH 1104 W MADISON 10P-2AM **FREE ALL NIGHT** ATTIRE:NO SLOPPY STUFF PERIOD! *SEXY PEOPLE ONLY PLEASE* |
| EARLY ARRIVAL SUGGESTED | TONIGHT AT BLU CORAL 1265 N MILWAUKEE 10PM-3AM LADIES DISCOUNTED UNTIL 11PM *FREE PARKING* VISIT WWW.MYSPACE.COM/49595276 |
| .::ARE YOU VIP::. | TONITE *PLUSH MONDAYS* AT PLUSH 1104 W MADISON 10P-2AM GOOD FOOD/GOODMUSIC *FREE ALL NIGHT* SEXY PEOPLE ONLY PLEASE!! |
| GRAND OPENING OF WET TONIGHT | *FANTASY FRIDAYS* TONIGHT AT WET 209 W LAKE 10P-4AM LADIES FREE TIL 11PM AND DISCOUNTED TIL 12AM *PROPER ATTIRE IS A MUST* |
| .::ARE YOU VIP::. | SPECIAL CELEB GUEST TONIGHT AT BLU CORAL 1265 N MILWAUKEE PARTY TIL 3AM/LADIES 1/2 PRICE TO 11:30PM FREE PARKING/ PROPER ATTIRE PLS! |
| .::ARE YOU VIP::. | EVERYBODY IS TALKING ABOUT *PLUSH MONDAYS* TONITE 1104 W MADISON 10PM-2AM/GOOD FOOD/GOOD MUSIC/SEXY PPL/PROPER ATTIRE/EVERYONE FREE! |
| .::ARE YOU VIP::. LADIES FREE | NEW EXCLUSIVE *FANTASY FRIDAYS* TONIGHT AT WET NIGHTCLUB 209 W LAKE 10P/4AM LADIES FREE TIL 11PM/PROPER ATTIRE PLEASE! |
| *DREAM* | THE SEXIEST SATURDAY NIGHT PARTY TONIGHT AT BLU CORAL 1265 N MILWAUKEE 10P/3AM LADIES DISCOUNTED UNTIL 11:30/FREE PARKING/PROPER ATTIRE PLEASE |
| EVERYBODY FREE ALL NITE!! | .::ARE YOU VIP::. PLUSH MONDAYS TONIGHT @ PLUSH 1104 W MADISON 9PM/2AM THE SEXIEST MONDAY NIGHT PARTY/PROPER ATTIRE PLS! |
| GRAND OPENING 2NITE! | JOIN US 4 THE KICK OFF *DIRTY SEXY MONEY* @ FILTHY LIBERTINE 1615 N CLYBOURN*SEXY NEW 2LEVEL VIP LOUNGE*10-2AM LADIES FREE TO 12AM |
| .::ARE YOU VIP::. LADIES FREE TIL | 2NITE AT BLU CORAL 1265 N MILWAUKEE *DREAM* THE SEXIEST SATURDAY NIGHT PARTY 10PM-3AM / FREE PARKING/PROPER ATTIRE |
| PLUSH MONDAYS | EXCLUSIVE FREE PARTY 2NITE AT PLUSH 1104 W MADISON 10-2A *FLY SOCIETY* IS BUYING 10 BOTTLES OF CATTIER CHAMPAGNE 2NITE TO GIVE AWAY B4 12 |
| LADIES FREE | DIRTY SEXY MONEY TONITE @ FILTHY LIBERTINE 1615 N CLYBOURN/NORTH AVE 2ND FL VIP LOUNGE..PARTY T0 2AM LADIES FREE ALL NITE! ROC / SEAN MAC |
| BREAKING NEWS | EXCLUSIVE RED CARPET EVENT 2NIGHT AT DREAM-BLU CORAL 1265 N MILWAUKEE *CONFIRMED NBA ALLSTARS* 10PM-3AM LADIES DISCOUNTED TO 12AM! |
| | EXCLUSIVE FREE PARTY 2NITE @ PLUSH 1104 W MADISON 10P-2AM *PLUSH MONDAYS* EVERYBODY FREE ALL NITE* *DJ SEAN MAC* PROPER ATTIRE/SEXY PPL ONLY! |
| FREE EVENT TONIGHT! | EXCLUSIVE VIP PARTY "DIRTY SEXY MONEY" TONIGHT AT LIBERTINE 2ND FLOOR VIP LOUNGE 1615 N CLYBOURN 10P-2A *LADIES FREE ALL NITE* |

3

| | |
|---|---|
| | FREE HALLOWEEN PARTY THIS FRIDAY AT BUZZ 308 W ERIE 10P TIL 4A * FREE ENTRY B4 12AM / $10 AFTER 12AM W/PASSWORD (BIG TOY) HOSTED BY FLY SOCIETY |
| | FREE HALLOWEEN PARTY TONIGHT AT THE BUZZ NIGHT CLUB 308 W ERIE 10PM-4AM//FREE TIL MIDNIGHT / $10 AFTER W/PASSWORD &quot;BIG TOY&quot; HOSTED BY FLY SOCIETY |
| | TONITE @ POLE KATZ 100TH / HARLEM 10P-3AM/LAST WAS CRAZY PACKED/SHAME ON U IF U MISS TONITE/WE BROUGHT ATL TO DA CHI *FLY SOCIETY* |
| | FREE WICKED HALLOWEEN PARTY 2NITE @ BUZZ 308 W ERIE 10-4a FREE ENTRY B4 12 W/PASSWORD 1/2 OFF AFTER 12 W/PASSWORD BIG TOY/HOSTED BY FLY SOCIETY |
| 2 HOT PARTIES | 2NITE NEW SEXY VENUE *ENVY* @ COLUMBUS LOUNGE 651 W WASHINGTON AND &quot;DREAM&quot; @ BLU CORAL 1265 N MILWAUKEE LADIES DISCOUNTED TO 12AM! |
| 2 HOT PARTIES 2NITE | NEW SEXY VENUE *ENVY* @ COLUMBUS LOUNGE 651 W WASHINGTON AND *DREAM* @ BLU CORAL 1265 N MILWAUKEE LADIES DISCOUNTED TO 12AM! |
| THE 2HOTTEST PARTIES | NEW VENUE *ENVY* @ COLUMBUS LOUNGE 651 W WASHINGTON AND *DREAM* @ BLU CORAL 1265 N MILWAUKEE LADIES DISCOUNTED TO 12AM! |
| URGENT | 2 SEXY PARTIES TONIGHT *ENVY* @ COLUMBUS LOUNGE 651 W WASHINGTON AND *DREAM* @ BLU CORAL 1265 N MILWAUKEE 10-3AM LADIES DISCOUNTED TO 12AM! |
| | THE WEATHER IS GREAT! EXCLUSIVE PARTY 2NITE @ PLUSH *PLUSH MONDAYS* 1104 W MADISON 10P-2A EVERYBODY FREE ALL NITE /SEXY PPL ONLY! |
| FLY SOCIETY * A&O | PRESENTS BARACK @ THE BUZZ VICTORY PARTY 2NIGHT @ BUZZ NIGHTCLUB 308 W ERIE 10P-4A COME CELEBRATE HISTORY 2NITE! |
| | FLY SOCIETY PRESENTS:EXCLUSIVE PLUSH MONDAYS TONITE 1104 W MADISON 10-2A/EVERYONE FREE ALL NITE W/DJ SEAN MAC/STRICT DRESS CODE |
| | FLY SOCIETY AND A/O HOST A SEXY NEW VENUE TONITE *ENVY* 651 W WASHINGTON / DESPLAINES 10P-3AM LADIES DISCOUNTED TO 12AM |
| | FLY SOCIETY / GOODFELLA PRESENTS DREAM EVERY SATURDAY AT BLU CORAL 1265 N MILWAUKEE 10P-3A /LADIES DISCOUNTED TIL 12AM/FREE PARK |
| | FLY SOCIETY PRESENTS *DREAM* TONIGHT AT BLU CORAL 1265 N MILWAUKEE 10P-3A THE HOTTEST SATURDAY NIGHT PARTY LADIES 1/2 OFF TO 12AM |
| | FLY SOCIETY PRESENTS:EXCLUSIVE PLUSH MONDAYS TONITE 1104 W MADISON 10P-2A EVERYBODY FREE ALL NITE W/DJ PREDATOR/SEXY PPL ONLY PLS! |

4

| | |
|---|---|
| | FLY SOICIETY HOST AN EXCLUSIVE FREE PARTY TONIGHT \| AT PLUSH 1104 W MADISON 10P-2A \| THIS IS ONLY FOR THE SEXY \| STRICT DR CODE!! |
| | FLY SOCIETY invites U to 2 sexy parties 2NITE:ENVY @COLUMBUS LOUNGE 651 W WASHINGTON AND DREAM @BLU CORAL 1265 N MILWAUKEE 10-3 |
| | FLY SOCIETY invites U to a NEW SEXY party 2NITE:ENVY @COLUMBUS LOUNGE 651 w Washington / Desplaines 10-3a LADIES 1/2 OFF TO 12 |
| | FLY SOCIETY invites U to THE HOTTEST SATURDAY NIGHT PARTY 2NITE: DREAM @ BLU CORAL 1265 N MILWAUKEE 10-3a LADIES 1/2 OFF TO 12A |
| | FLY SOCIETY PRESENTS:EXCLUSIVE PLUSH MONDAYS TONITE 1104 W MADISON 10-2A/EVERYONE FREE ALL NITE W/DJ SEAN MAC/STRICT DRESS CODE |
| | FLY SOCIETY INVITES U TO THE OFFICIAL WELCOME HOME BULLS PARTY TONIGHT BLACK FRIDAY @ ONTOURAGE 157 W ONTARIO 10P-3AM LADIES 1/2 OFF W/TEXT B4 12AM |
| | FLY SOCIETY INVITES U TO DA OFFICIAL BULLS PARTY TONITE BLACK FRIDAY @ONTOURAGE 157 W ONTARIO 10P-3A LADIES 1/2 OFF B4 12 W/TEXT |
| | FLY SOCIETY invites U TO 2 HOT PARTIES 2NITE:ENVY @COLUMBUS 651 W WASHINGTON/DESPLAINES AND DREAM @BLU CORAL 1265N MILWAUKEE 10-3A |
| | FLY SOCIETY invites YOU TO THE SEXIEST SAT NIGHT PARTY 2NITE: ENVY @COLUMBUS 651 W WASHINGTON/DESPLAINES 10-3A/LADIES 1/2 TO 12AM |
| | FLY SOCIETY invites YOU TO THE HOTTEST SAT NIGHT PARTY 2NITE: DREAM @BLU CORAL 1265 N MILWAUKEE 10-3A/LADIES 1/2 TO 12AM |
| | FLY SOCIETY invites U to:EXCLUSIVE PLUSH MONDAYS 2NITE 1104 W MADISON 10-2A *NO COVER ALL NITE* W/DJ ROC/SEXY PPL ONLY PLEASE! |
| | GLC'S B-DAY BASH 2NITE AT 2 CLUBS *1ST @COLUMBUS 651 W WASHINGTON // *2ND @BLU CORAL 1265 N MILWAUKEE BOTH PARTIES ARE 10-3AM!! |
| | FLY SOCIETY HOST GOOD MUSIC'S GLC B-DAY 2NITE @BLU CORAL 1265 N MILWAUKEE 10-3AM//LADIES 1/2 OFF TO 12AM//STRICT DRESS CODE!! |
| | FLY SOCIETY HOST GOOD MUSIC'S GLC B-DAY 2NITE PART 1 @COLUMBUS 651 W WASHINGTON 10-3A/LADIES FREE TO 12AM STRICT DRESS CODE!! |
| | GOOD MUSIC'S GLC AND SPECIAL CELEBRITY NBA GUEST* TONIGHT PLUSH MONDAYS 1104 W MADISON 10P-2A/NO COVER ALL NITE/STRICT DR CODE! |
| | CELEB NBA GUEST 2NITE @BLU CORAL 1265 N MILWAUKEE AND @COLUMBUS 651 W WASHINGTON *10P-3A LADIES R 1/2 OFF TO 12AM BOTH PARTIES! |
| | CELEB NBA GUEST 2NITE @BLU CORAL 1265 N MILWAUKEE AND @COLUMBUS 651 W WASHINGTON *10P-3A LADIES R 1/2 OFF TO 12AM BOTH PARTIES |

| | |
|---|---|
| | FLY SOCIETY PRESENTS*EXCLUSIVE PLUSH MONDAYS 2NITE 1104 W MADISON 10-2A/NO COVER ALL NITE/REPLY TO BOOK UR TABLE AND BOTTLE NOW! |
| | THE OFFICIAL LA CLIPPERS PARTY *WED DEC 17TH @DRAGONFLY 832 W RANDOLPH *HOSTED BY THE CLIPPERS 10P-2A *LADIES DISCOUNTED TO 12AM!! |
| | THE OFFICIAL LA CLIPPERS PARTY *TONIGHT @DRAGONFLY 832 W RANDOLPH *HOSTED BY THE CLIPPERS 10P-2A*DJ SEAN MC*LADIES FREE TO 11PM |
| | LA CLIPPERS PARTY *TONITE @DRAGONFLY 832 W RANDOLPH *HOSTED BY THE CLIPPERS 10P-2A*SEAN MAC*LADIES FREE TO 11P*DONT MISS IT! |
| | YOU R INVITED TO THE HUGE GRAND OPENING OF VANITY 2NIGHT @DRAGONFLY 832 W RANDOLPH 10-2A*EVERYBODY FREE TO 12A REPLY TO RSVP! |
| | HUGE GRAND OPENING 2NITE *NEW FRIDAY NIGHTS @DRAGONFLY 832 W RANDOLPH 10P-2A EVERYBODY FREE TO 12A W/RSVP REPLY TO RSVP SEXY PPL |
| | HUGE NBA PARTY 2NITE @BLU CORAL THE HOTTEST SAT NITE PARTY 1265 N MILWAUKEE 10-3A LADIES FREE TO 11P *WE ARE NOT @COLUMBUS 2NITE |
| | FLY SOCIETY INVITES YOU TO PRESTIGE' THE SEXY, HOTTEST SUNDAY NITE PARTY TONIGHT @ RUBY 151 W OHIO 10P-4AM LADIES FREE TIL 12AM |
| | FLY SOCIETY PRESENTS*EXCLUSIVE PLUSH MONDAYS 2NITE 1104 W MADISON 10-2A/NO COVER ALL NITE/REPLY TO BOOK UR TABLE AND BOTTLE NOW! |
| | CHICAGO'S BIGGEST CELEB XMAS EVE PARTY TONITE @ VICTOR HOTEL 311 N SANGAMON *15 CONFIRMED NBA SUPERSTARS* W/DJ SEAN MAC* 9P-2AM |
| | JEREMIH *BIRTHDAY SEX* PERFORMING LIVE 2NIGHT @DRAGONFLY 832 W RANDOLPH 10P-2A DRAGONFLY FRIDAYS LADIES FREE TO 1130 SEXY PPL ONLY |
| | SEE JEREMIH TONITE *BIG JAM AFTER PARTY* @ BLU CORAL 1265 N MILWAUKEE 10P-3A LADIES FREE TO 11P \| *PRESTIGE SUNDAY NITES @ RUBY |
| | HUGE CELEB EVENT @ ALHAMBRA PALACE 1240 W RANDOLPH SAT JAN 3RD *TIBERWOLVES / BULLS AFTERPARTY* EVERYBODY FREE TIL 11:30 PLS FWD |
| | HUGE CELEB B-DAY PARTY FOR *SHAWNNA TONIGHT @DRAGONFLY 832 W RANDOLPH·10-2A *LADIES FREE TIL 11/OPEN BAR TIL 12A *ATTIRE SEXY! |

# EXHIBIT C

**LEGAL NOTICE**

**IF YOU RECEIVED A TEXT MESSAGE ADVERTISEMENT FOR CERTAIN NIGHT CLUB EVENTS FROM SEPTEMBER 25, 2004 THROUGH _____ XX, 2010, YOU COULD BE ENTITLED TO A PAYMENT FROM A CLASS ACTION SETTLEMENT.**

*Visit www.[website].com for more information*

## NOTICE OF CLASS ACTION AND PROPOSED SETTLEMENT

A proposed class action settlement has been reached in the case *Jepsen v. Club Texting, Inc., et al.* The Settlement resolves a lawsuit over allegedly unsolicited text message advertisements that were sent to consumers' cell phones, which may violate federal law.

Your legal rights may be affected whether you act, or don't act. Please read this notice carefully. Visit www.[website].com to read the full agreement and make a claim.

### What is the Lawsuit About?

This lawsuit alleges that Club Texting, Inc. sent advertisements for a nightclub promoter about certain Chicago-area nightclub events by sending unsolicited text messages to the cell phones of consumers in violation of a federal statute. This lawsuit seeks to represent a group or "class" of persons who received such text messages.

Club Texting denies that it sent unsolicited messages or that it violated any law. The Court has not determined who was right. Rather, the parties have agreed to settle the lawsuit to avoid the uncertainties, expenses, and waste of resources that will result from further litigation. This notice is not an admission of wrongdoing by any party.

### How Do I Know if I am a Class Member?

You may be a Class Member if you received an unsolicited text message advertisement from a night club promoter using the name "Fly Society" (or similar name) that was transmitted by Club Texting, Inc. or its affiliates during the period between September 25, 2004 and [Date]. You can see examples of these text messages and Class Members can file a Claim Form online at www.[website].com.

### What Can I Get From the Settlement?

If you are a Class Member, and the Court approves the Settlement, you are entitled to receive a $67.50 payment. In addition to providing cash payments, Club Texting, has agreed to implement certain procedures to ensure that consumers provide their express consent to receive future text message ads, and that such ads contain instructions on how to stop receiving text ads.

### How Can I Get A Payment?

To qualify for payment, you must submit a timely, truthful, accurate, and properly completed Claim Form. You may either submit the Claim Form online at www.[website].com by following the instructions found with the link, or you may mail a completed claim form **postmarked no later than [Claims Deadline].**

If you choose to mail your Claim Form, please send your completed form only to the following address prior to [Claims Deadline]: Strategic Claims Services, 600 North Jackson St., Media, PA 19063.

### What are My Other Options?

You or your lawyer has the right to appear before the Court and object to the proposed Settlement. Your written objection must be submitted by **[Opt-out / Objection Deadline].** If you do not wish to be a member of the Settlement Class, you may exclude yourself by writing to the Claims Administrator. Specific instructions are available in the Stipulation of Class Action Settlement available at www.websitecom. Your request ***must*** be submitted by **[Opt-out / Objection Deadline].**

If you do nothing you will be in the Settlement Class, and if the Court approves the settlement, you will also be bound by all orders and judgments of the Court. If approved, your claims against Club Texting relating to the unauthorized text messages that are the subject of this case will be fully resolved and released.

### Who Represents Me?

The Court has approved Ryan D. Andrews and Rafey S. Balabanian of KamberEdelson LLC to be the attorneys representing the Class in this case. These attorneys are referred to as Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

Class Counsel will ask the Court for attorneys' fees and expenses up to $60,000. Club Texting has agreed to pay the Class Representative $5,000 for his services in helping to bring and settle this case. The Court may award less than these amounts.

### When will the Court Consider the Proposed Settlement?

The Court will hold the Final Approval Hearing at [time] on [date] at the United States Courthouse, 219 South Dearborn Street, Courtroom 1403, Chicago, Illinois. At that hearing, the Court will hear any objections concerning the fairness of the Settlement that have been properly requested, as set forth above. The hearing may be postponed to a different date or time without notice. You are not required to come to the Final Approval Hearing.

### How Do I Get More Information?

For more information about the proposed settlement and a copy of the Full Notice and Claim Form, go to www.[website].com, contact the Settlement Administrator at 600 North Jackson St., Media, PA 19063, or call Class Counsel at 1-866-354-3015.

By Order of the Court Dated: [Date]

# EXHIBIT D

## NOTICE OF CLASS ACTION AND PROPOSED SETTLEMENT

**IF YOU RECEIVED A TEXT MESSAGE ADVERTISEMENT FOR CERTAIN NIGHT CLUB EVENTS FROM SEPTEMBER 25, 2004 THROUGH _____ XX, 20XX, YOU COULD BE ENTITLED TO A PAYMENT FROM A CLASS ACTION SETTLEMENT.**

*Visit www.[website].com for more information*

A federal court has preliminarily approved the settlement of a class action lawsuit relating to alleged unsolicited text messages advertising events and promotions for certain Chicago-area nightclubs. For complete information, visit www.[website].com. **The sole purpose of this notice is to inform you of the settlement so that you can decide what to do about it.**

The lawsuit claimed that Defendant Club Texting, Inc. sent unsolicited text messages for a night club promoter using the name "Fly Society" (or similar name), which advertised events at certain Chicago-area nightclubs to cellular telephone users in violation of a federal law. Club Texting denies these claims and denies doing anything wrong, but is settling this lawsuit to avoid the burden, costs, risk, and uncertainty of continuing the case.

You are a Class Member if you received an unsolicited text message advertisement from a night club promoter using the name "Fly Society" (or similar name) that was transmitted by Club Texting, Inc. or its affiliates during the period between September 25, 2004 and _____ XX, 20xx. Visit www.[website].com for examples of the included text messages. The settlement will provide $67.50 to Class Members who qualify and submit a valid claim form, and up to $60,000 in costs and attorneys' fees. The settlement will also provide a $5,000 dollar incentive award to the Class Representative, William Jepsen, for his services in representing the Class in this litigation. You may also choose to exclude yourself from the settlement or object to the settlement. Complete information can be found at www.[website].com.

### Class Members' Legal Rights And Options In The Settlement

| | | |
|---|---|---|
| SUBMIT A CLAIM FORM | The only way to get a payment. Give up your right to be part of any other lawsuit involving claims associated with this settlement. | You must submit either the on-line claim by or postmark the paper claim form by _____ **XX, 20xx** to the Settlement Administrator, or your claim will be rejected. The Claim Form requires you provide certain information, including a cellular telephone that matches a list of numbers that received the text message(s) at issue. |
| EXCLUDE YOURSELF | Get no refund. Keep your right to be a part of other lawsuits involving claims associated with this settlement. | Your exclusion request must be in writing and ***postmarked*** to the Settlement Administrator no later than _____ **XX, 20xx.** |
| OBJECT | Write to the Court about the reasons that you are against the settlement. | Your Objection must be in writing and filed with the Court and served on counsel by _____ **XX, 20xx.** |
| GO TO THE HEARING | Ask to speak in Court about the fairness of the settlement. | You must file a notice of your intention to appear and object with the Court by _____ **XX, 20xx.** |
| DO NOTHING | Receive no payment. Give up your rights. | |

For complete information about the settlement and claim forms, please visit www.[settlement].com. You may also contact Ryan D. Andrews of KamberEdelson, LLC, one of the attorneys for the class members through www.kamberedelson.com or calling 1-866-354-6374.

# EXHIBIT E

# IF YOU RECEIVED A TEXT MESSAGE ADVERTISEMENT FOR CERTAIN NIGHT CLUB EVENTS FROM SEPTEMBER 25, 2004 THROUGH _____ XX, 2010, YOU COULD BE ENTITLED TO A PAYMENT FROM A CLASS ACTION SETTLEMENT.

*A Federal Court authorized this notice. This is not a solicitation from a lawyer or a lawsuit against you.*

- A proposed class action settlement has been reached in the case *Jepsen v. Club Texting, Inc., et al.* The Settlement resolves a lawsuit over allegedly unsolicited text message advertisements that were sent to consumers cell phones, which may violate federal law.
- You may be a Settlement Class Member and could get a $67.50 settlement payment if you are a person residing in the State of Illinois who received one or more unsolicited text messages promoting certain Chicago-area nightclub events transmitted by Club Texting, Inc. or its affiliates during the period between September 25, 2004 and _____ XX. See below for further information.
- Your legal rights may be affected whether you act, or don't act. Read this notice carefully.

| CLASS MEMBERS' LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | This is the ONLY way to get a payment. You must be a Settlement Class Member and submit a Claim Form, either through the mail or online by clicking <u>here.</u> **Your claim must be submitted online or postmarked no later than [Claims Deadline].** A paper Claim Form can be printed by clicking <u>here</u>. The Claim Form requires you to provide certain information, including a cellular telephone that matches a list of numbers that received the text message(s) at issue. |
| **DO NOTHING** | You will not receive a payment. You will, however, still be giving up certain legal claims against Club Texting, Inc. |
| **EXCLUDE YOURSELF** | You will receive no payment, but this is the only option that allows you to ever be part of any other lawsuit against Club Texting, Inc. about the legal claims in this case. Your exclusion request must be in writing and ***postmarked*** to the Settlement Administrator no later than [Opt-out / Objection Deadline]. |
| **OBJECT** | Write to the Court about why you do not like the Settlement and do not want it to be approved. You must file and serve a Notice of your Intention to Appear and Object with the Court by [Opt-out / Objection Deadline]. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlement by giving filing and serving notice of your intent by [Opt-out / Objection Deadline]. The Final Fairness Hearing is current scheduled for [Date.] |

- These rights and options—**and the deadlines to exercise them**—are explained below.

- The Court in charge of this case has preliminarily approved the Settlement and must decide whether to give final approval to the Settlement. Payments will only be made to those who submit valid claims if the Court approves the Settlement, or after appeals are resolved. Please be patient.

## BASIC INFORMATION

### 1. What is this lawsuit about?

This lawsuit alleges that a company called Club Texting, Inc. sent advertisements for a night club promoter about certain Chicago-area nightclub events by sending unsolicited text messages to the cell phones of consumers in violation of a federal statute. This lawsuit seeks to represent a group or "class" of persons who received such text messages. Club Texting denies that it sent unsolicited messages or that it violated any law. The Court has not determined who was right. Rather, the parties have agreed to settle the lawsuit to avoid the uncertainties, expenses, and waste of resources that will result from further litigation. This notice is not an admission of wrongdoing by any party.

### 2. Why is this a class action?

In a class action, one or more people called Class Representatives (in this case, William Jepsen), sue on behalf of a group (or a "class") of people who have similar claims. All these people are a Class or Class Members. After the parties reached an agreement to settle the case, the Court recognizes that this is a case that should be treated as a class action for the purposes of settling the case. The Court then resolves the issues for all Class Members, except for those who exclude themselves from the Class.

### 3. Why is there a settlement?

The Court has not decided who should win this case. Instead, there was no trial and both sides agreed to a settlement. That way, both parties avoid the cost of a trial, and the Settlement Class Members will get compensation now rather than years from now, if at all. The Class Representative and the attorneys think the settlement is best result for all Class Members.

### 4. How do I know if I am part of the Settlement Class?

To get money from this settlement, you first have to decide if you are a Class Member. The Court decided that everyone who fits the following description is a Settlement Class Member:

> All persons residing in the State of Illinois who, from September 25, 2004, until [the date that the Preliminary Approval Order is entered], received a Fly Society Text Message transmitted by Club Texting, Inc. and/or its affiliates that was sent without such person's consent.

Fly Society was a promoter of nightclub events in the Chicago-land area and used the text messaging services of Club Texting to send its advertisements to consumers. A list of

2

examples of the messages at issue can be found be clicking here.

If you believe you are a Settlement Class Member, you can file a Claim Form by clicking **here**.

The Claim Form will require you to supply your name and address and to declare under penalty of perjury that you received one or more text messages that are the subject of the Settlement, and that you did not provide your express consent to any person or company to send you the text message(s), The Claim Form will also require you provide the cellular telephone number that received the Fly Society Text Message(s), which will checked against a list of numbers that received the text message(s) at issue.

### 5.  What can I get from the settlement?

If you are a Settlement Class Member, and the Court approves the Settlement, you may be entitled to receive $67.50 from Club Texting, Inc.  You can submit a claim by clicking here.  In addition to offering cash payments, Club Texting has agreed to implement certain procedures to ensure that consumers provide their express consent to receive future text message ads and that such ads contain instructions on how to stop getting text ads.

### 6.  How can I get a payment?

To qualify for payment, you must submit a timely, truthful, accurate, and properly completed Claim Form. You may obtain a Claim Form by clicking **here**.   You may either submit the Claim Form online by following the instructions found with the link, or you may mail a completed claim form **postmarked no later than [Claims Deadline].**

We highly encourage you to submit your claim electronically. Not only is it easier and more secure, it is completely free and takes only minutes!  Click here to submit an on-line claim.

If you still prefer to mail your Claim Form, please send your completed form only the following address prior to [Claims Deadline]:

> Strategic Claims Services
> 600 North Jackson Street
> Media, PA 19063

### 8.  What am I giving up to receive these benefits?

Unless you exclude yourself, you are staying in the Settlement Class and are agreeing to the terms of the Settlement.  Generally, that means that you can't sue, continue to sue, or be part of a future suit involving the claims raised in this case against Club Texting, Inc. In other words, you are agreeing to "release" those claims.  Unless you exclude yourself, you are "releasing" these claims, regardless of whether you submit a Claim Form or not.

The exact release contained in the parties' Settlement is much more detailed, and you may want to consider it before making your decision about participating in the Settlement.  You can see a complete copy of the Stipulation of Settlement by clicking **here.**

3

## Excluding Yourself from the Settlement

If you don't want to receive the benefits of Settlement, but you want to keep any right to sue that you may have or you want to continue to sue Club Texting on your own over the claims in this case, then you must take steps to get out of this settlement. This is called excluding yourself—or is sometimes referred to as opting out of the Settlement Class.

### 9. How do I exclude myself from the settlement?

To exclude yourself from the Settlement, you must send a letter by mail saying that you want to be excluded from *Jepsen v. Club Texting, Inc., et al.,* Case No. 08-CV-5508 (N.D. Ill.). Be sure to include your name, address, your telephone number, your signature, and the name and number of the case. In order to be valid, your exclusion request must be **postmarked no later than [Opt-out / Objection Deadline]** to:

Strategic Claims Services
600 North Jackson Street
Media, PA 19063

If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement.

### 10. If I exclude myself, do I still receive benefits from this settlement?

No, you will not receive anything resulting from the settlement of this case. But, you may be able to sue, continue to sue, or be part of a different lawsuit against Club Texting, Inc. If you want your own attorney to represent you in an individual case, you may hire one at your own expense.

## The Lawyers Representing You

### 11. Do I have a lawyer in this case?

The Court has approved Ryan D. Andrews and Rafey S. Balabanian of KamberEdelson, LLC to be the attorneys representing the Class Representative and Settlement Class in this case. These lawyers are referred to as "Class Counsel." Class Counsel believe that after conducting an extensive investigation, that the Settlement is fair, reasonable, and in the best interests of the class. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

### 12. How will the lawyers be paid?

Class Counsel will ask the Court for attorneys' fees and expenses up to $60,000. The Court may award less than this amount. The fees would pay Class Counsel for investigating the facts, litigating the case, and negotiating the settlement. Club Texting, Inc. will separately pay the fees and expenses that the Court awards Class Counsel and will not in any way lower the amount to be paid to members of the Class.

Subject to approval by the Court, Club Texting has agreed to pay $5,000 to the Class Representative, William Jepsen, in this case for his services in helping to bring and settle this case.

4

### Objecting to the Settlement

You can tell the Court that you don't agree with the Settlement or some part of it. Only those that remain in the Settlement Class may object to the Settlement. You cannot object if you have opted out or excluded yourself from the Settlement Class.

### 13. How do I tell the Court that I don't like the settlement?

If you're a Settlement Class Member, you can object to the Settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must file and serve a document saying that you object to the Settlement in *Jepsen v. Club Texting, Inc., et al.,* Case No. 08-CV-5508 (N.D. Ill.), and identify your reasons for objecting and attach copies of any materials you rely on for your objections. Be sure to include your name, address, telephone number, signature, and the reasons you object to the Settlement.

You must also specifically identify whether you received a text message of the kind described in this case and whether it was received within the relevant time period. If you want to speak at the Final Approval Hearing, you must say so in your objections. If you fail to object as specified in this Notice, you will be deemed to have waived any objections.

In order to be considered, any objections must be **postmarked no later than [Opt-out / Objection Deadline]**. Any objections and supporting materials should be sent to:

> Clerk of the Court
> United States District Court for the Northern District of Illinois
> 219 South Dearborn Street
> Chicago, Illinois 60604
>
> AND TO:
>
> Ryan D. Andrews, Esq.
> KamberEdelson, LLC
> 350 N. LaSalle St., Suite 1300
> Chicago, Illinois 60654
>
> AND TO:
>
> Ian H. Fisher
> Schopf & Weiss LLP
> One South Wacker Drive, 28th Floor
> Chicago, Illinois 60606

### YOU MAY NOT OBJECT TO THE SETTLEMENT ONLINE.

### The Fairness Hearing

The Court has preliminarily approved the Settlement and will hold a hearing to decide

whether to give final approval to the Settlement. You may attend this hearing and you may ask to speak, but you do not have to.

### 14. When and where is the Final Approval Hearing?

The Court will hold the Final Approval Hearing at [time] on _____ XX, 20xx at the United States Courthouse, 219 South Dearborn Street, Courtroom 1403, Chicago, Illinois. The purpose of the hearing will be (1) for the Court to determine whether the Stipulation of Settlement should be approved as fair, reasonable, adequate, and in the best interests of the Settlement Class; (2) to consider Class Counsel's request for an award of attorneys' fees and expenses in the amount of $60,000; and (3) to consider the request for an incentive award to Mr. Jepsen in the amount of $5,000.

At that hearing, the Court will be available to hear any objections and arguments concerning the fairness of the Settlement that have properly been requested, as set forth above. The hearing may be postponed to a different date or time without notice. You are not required to come to the Final Approval Hearing.

### Getting More Information

### 15. How do I get more information?

This summarizes the Settlement and its terms. You may see a free complete copy of the Settlement Agreement by clicking **here**. If you have any questions, you can contact the Claims Administrator at 600 North Jackson Street, Media, PA 19063. Please include the case name and number, and your name and your current return address on any letters, not just the envelopes. You may also request a copy of the Stipulation of Class Action Settlement from the Claims Administrator by sending a letter to 600 North Jackson Street, Media, PA 19063.

Before doing so, please read this Notice carefully. You may also find additional information elsewhere on this website. Do not call or direct any inquiries to the Court, to Club Texting or to Defendant's attorneys.

Instead, to obtain information about the terms and conditions concerning the settlement, you may also contact Class Counsel, as follows:

**Class Counsel:**
Ryan D. Andrews
Rafey S. Balabanian
KamberEdelson LLC
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
Tel: 1-866-354-3015
www.kamberedelson.com


By Order of the Court Dated: [Date]

# EXHIBIT F

**KamberEdelson LLC Announces Text Messaging Settlement.**

A settlement has been reached with Club Texting, Inc. in a class action lawsuit relating to the alleged transmission of unsolicited text messages to Illinois cell phones users.  As part of its business, Club Texting provides a text messaging platform that businesses, social groups, and governments use to contact their clients, members, and constituents. The settlement concerns allegations that a night club promoter called "Fly Society" improperly failed to gain express consent of consumers prior to using the Club Texting platform to send text messages advertising various night club events throughout Chicagoland.

The settlement, which was preliminarily approved by a Chicago federal court on _____, provides those who received such messages without their consent to submit a claim for a $67.50 settlement payment. Club Texting, Inc. has also agreed to require that future users of its text messaging transmission platform both view and consent to obtaining the prior express consent of each person to whom a text message is sent.

Named defendants Club Texting, Inc. and JoonBug Productions, Inc., have denied violating any law or engaging in any wrongful conduct whatsoever, but have agreed to settle the lawsuit to avoid the high costs and risks involved in any lawsuit.  Club Texting has insisted that its clients—including state governments and higher education institutions that use its services to provide announcements or warnings to their distribution lists—properly comply with all applicable laws.

Chicago attorneys Ryan D. Andrews and Rafey S. Balabanian of KamberEdelson LLC were appointed by the Court to serve as the attorneys for the class.  Class members are encouraged to visit www.[website].com to learn more details about the settlement and how to apply for a settlement payment. Class members may also call KamberEdelson LLC at 1-866-354-3015 for more information.

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM JEPSEN, individually and on behalf of a class of similarly situated individuals, | ) ) ) | |
| *Plaintiff,* | ) ) | No. 08-CV-5508 |
| v. | ) ) | Honorable Wayne R. Andersen |
| CLUB TEXTING, INC., a New York corporation, JOONBUG PRODUCTIONS, INC. a New York corporation, | ) ) ) | Magistrate Judge Michael T. Mason |
| *Defendants.* | ) ) | |

<u>**DECLARATION OF RYAN D. ANDREWS**</u>

Pursuant to 28 U.S.C. § 1764, I, Ryan D. Andrews, hereby declare and state as follows:

1.     I am an attorney admitted to practice in the State of Illinois and in the United States District Court for the Northern District of Illinois. I am entering this declaration in support of the attached Motion for Preliminary Approval of Class Action Settlement. I am over the age of eighteen and am fully competent to make this declaration. This declaration is based upon my personal knowledge, except where expressly noted otherwise.

2.     On October 14, 2009, I, along with William Jepsen, Shahriyar Neman, counsel for the Defendants, and other members of KamberEdelson participated in a settlement conference with Judge Mason. At the settlement conference, Defendants stated that the messages at issue in the Complaint were limited to advertising Chicago-area nightclub events and it was agreed that the proposed settlement class could be limited to Illinois residents. An agreement in principal was reached at the settlement conference and the agreed-upon material terms were read into the record. After the settlement conference, I participated negotiations with Defendants' counsel over the specific terms of the instant Stipulation of Settlement.

3.    "Fly Society" text messages were sent to approximately 4000 persons on multiple occasions and I believe that the requisite prior express consent was not properly obtained from a substantial number, if not all of, the recipients.

4.    Mr. Jepsen has been of crucial assistance in this litigation, including actively participating in the settlement conference. In my opinion, Mr. Jepsen's contributions were necessary to the success of the litigation and lead to the agreement in principal at the settlement conference.

5.    Rafey S. Balabanian and I have regularly engaged in major complex litigation, and have both had extensive experience in consumer class action lawsuits involving cellular phone technology. I have been appointed class counsel in multiple complex consumer class action settlements including *Parone v. m-Qube, Inc. et al, No. 08 CH 15834* (Cir. Ct. Ill.); *Paluzzi v. Cellco Partnership d/b/a Verizon Wireless and mBlox, Inc.,* No. 07 CH 37213 (Cir. Ct. Ill.); *Gray v. Mobile Messenger Americas, Inc.,* No. 08-CV-61089 (S.D. Fla.); and *Lofton v. Bank of America Corporation et. al,* No. 07-5892 (N.D. Cal.). Mr. Balabanian has served as class counsel in *Parone v. m-Qube, Inc. et al,* No. 08 CH 15834 (Cir. Ct. Ill*.);* and *Van Dyke v. Media Breakaway, Inc.,* No. 08-22131-CIV (S.D. Fla.). Attached as Exhibit 1 hereto is a true and accurate copy of the firm resume of KamberEdelson LLC.

6.    I believe that Plaintiff's TCPA claim is strong, but am nonetheless cognizant of the untested nature of this claim in the Seventh Circuit and that Defendants have raised several legal defenses, any of which, if successful, would result in the Settlement Class receiving no payment whatsoever. I am also of the opinion that it is unlikely that Defendants could financially sustain a judgment for complete statutory damages

were Plaintiff ultimately successful. With all of these considerations in mind, and because the settlement provides substantial injunctive relief, I believe that the settlement is an excellent result for the Settlement Class.

7.  In the absence of settlement, I believe that the expense, duration, and complexity of the resulting protracted litigation would be substantial. I believe that evidence and witnesses from across the country would have to be assembled for such litigation. In my opinion, given the novelty of the issues and the amount in controversy, the defeated party would likely appeal. As such, I believe that the immediate relief provided to the Settlement Class under the Stipulation of Settlement supports its approval.

8.  In my opinion, the proposed Stipulation of Settlement is in the best interest of the Settlement Class because each Settlement Class Member is guaranteed an immediate payment of $67.50, and, in addition, the Settlement Class will receive substantial injunctive relief.

9.  The Stipulation of Settlement was not finalized until Plaintiff's counsel engaged in extensive investigation into the claims and defenses and were able to reasonably evaluate the merits of Plaintiff's claim.

10. Based on my experience as a class action attorney, I believe that the Stipulation of Settlement is fair and in the best interest of the Settlement Class.

11. I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 5, 2009                          Respectfully Submitted,

                                                /s/ Ryan D. Andrews_____

                                                RYAN D. ANDREWS

# EXHIBIT 1

## KAMBEREDELSON, LLC FIRM RESUME

KAMBEREDELSON, LLC is a commercial litigation and legal consulting firm with attorneys in Illinois, New York, California, and Florida. The firm has four primary practice groups: plaintiffs' class action litigation (with a particular emphasis on technology cases), e-discovery and information technology, general commercial litigation, and legal and political consulting.

Our attorneys have been recognized as leaders in these fields by state and federal legislatures, national and international media groups, the courts and our peers. Our reputation for leadership in class action litigation has led state and federal courts to appoint us lead counsel in many high-profile class action suits, including the 2007 contaminated pet food recall, the recent Thomas the Tank Engine lead paint class actions, the AT&T mobile content class actions, and the Sony CD technology multi-district litigation. We have testified before the United States Senate on class action issues and have repeatedly been asked to work on federal and state legislation involving cellular telephony and other issues. Our attorneys have appeared on dozens of national and international television and radio programs to discuss our cases and class action and consumer protection issues more generally. Our attorneys speak regularly at seminars on consumer protection and class action issues, lecture on class actions at law schools and are asked to serve as testifying experts in cases involving class action and consumer issues.

## PLAINTIFFS' CLASS AND MASS ACTION PRACTICE GROUP

KAMBEREDELSON is a leader in plaintiffs' class and mass action litigation, with a particular emphasis on technology class actions. As has been recognized by federal courts, our firm has an "extensive histor[y] of experience in complex class action litigation, and [is a] well-respected law firm[] in the plaintiffs' class action bar." *In re Pet Food Prod. Liab. Litig.*, MDL Dkt. No. 1850, No. 07-2867 (NLH) (D.N.J. Nov. 18, 2008). A leading arbitrator concurred: "The proof of KamberEdelson's experience, reputation, and abilities is extraordinary. . . . Each [of their cases] elaborates on the experience and unique success [they] have had in achieving leading roles in the area of 'technology consumer protection class actions.'" (Arbitration award in mobile content class action settlement, August 6, 2009)

We have several sub-specialties within our plaintiffs' class and mass action practice group:

> ***Consumer Technology Class Actions***: We have settled the only class actions to date alleging text message spam under the Telephone Consumer Protection Act, including a $7,000,000 settlement with Timberland Co. We have prosecuted over 100 cases involving mobile content, settling numerous nationwide class actions, including against industry leader AT&T Mobility, and an injunctive settlement against Facebook, Inc. Our attorneys also settled an international class action against Register.com, which alleged that the company engaged in deceptive practices in placing advertising on "coming soon" pages of newly registered domain names.

**Representative Settlements:**

- *Shen v. Distributive Networks LLC.* No. 06 C 4403 (N.D. Ill.): Co-lead counsel in a class action alleging that defendant violated federal law by sending unsolicited text messages to the cellular telephones of consumers nationwide. The settlement – the first of its kind in the country – provided each class member with up to $150 in cash.

- *Weinstein, et al. v. Airit2me, Inc.*, Case No. 06 C 0484 (N.D. Ill): Co-lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers. Case settled for $7,000,000.

- *McFerren v. AT&T Mobility, LLC*, No. 08-CV-151322 (Fulton County Sup. Ct., GA): Lead counsel in pending class action settlement involving 16 related cases against largest wireless service provider in the nation. Settlement provides virtually full refunds to a nationwide class of consumers who alleged that unauthorized charges for mobile content were placed on their cell phone bills.

- *Gray v. Mobile Messenger Americas, Inc.*, No. 08-CV-61089 (S.D. Fla.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Case settled for $12,000,000.

- *Gresham v. Cellco Partnership*, No. BC 387729 (Los Angeles Sup. Ct.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Settlement provided class members with full refunds.

- *Duffy v. Nevis Mobile, LLC*, No. 08 CH 21376 (Cir. Ct. Cook County, IL): Class counsel in certified class action against mobile content provider for unauthorized mobile content charges resulting in default judgment over $10,000,000.

- *Abrams v. Facebook, Inc.*, No. 07-05378 (N.D. Cal.): Lead counsel in non-class action settlement concerning the transmission of allegedly unauthorized mobile content.

- *Zurakov v. Register.com,* No. 01-600703 (New York County, NY): Co-lead counsel in a class action brought on behalf of an international class of over one million members against Register.com for its deceptive practices in registering Internet domain names. Settlement required Register.com to fully disclose its practices and provided the class with relief valued in excess of $17,000,000.

- *Kiesel v. Time Warner*, No. 809542 (Orange County Sup. Ct., CA): Co-lead counsel in a representative action on behalf of thousands of apartment and condominium residents in which firewalls were breached during cable installation. Settlement provided the class with complete relief including the inspection of every multi-unit dwelling in the affected county and

repair of all breached units wherever they were found.

- *Weaver v. WebTV,* No. 793551 (Santa Clara Sup. Ct., CA): Co-lead counsel in a certified nationwide consumer class action alleging consumer fraud/deceptive advertising of computer services and capabilities. The settlement provided the class with a collective award guaranteeing a minimum face value of $6,000,000.

**Products Liability Class Actions**: We have been appointed lead counsel in state and federal products liability class settlements, including a $30,000,000 settlement resolving the "Thomas the Tank Engine" lead paint recall cases, a $32,000,000 settlement involving the largest pet food recall in the history of the United States and Canada, and a $100,000,000 settlement involving Starlink Corn Products.

**Representative Settlements:**

- *Barrett v. RC2 Corp.*, No. 07 CH 20924 (Cir. Ct. Cook County, IL): Co-lead counsel in lead paint recall case involving Thomas the Tank toy trains. Settlement is valued at over $30,000,000 and provides class with full cash refunds and reimbursement of certain costs related to blood testing.

- *In re Pet Food Products Liability Litigation*, No. 07-2867 (D. N.J.): Co-lead counsel in class action involving largest pet food recall in United States history. Settlement provided $24,000,000 common fund and $8,000,000 in charge backs.

- *In re Starlink Corn Products Liability Litigation* (N.D. Ill.): Represented sub-class of farmers who grew recalled Starlink corn in a consolidated settlement of federal class action valued in excess of $100,000,000.

- *Kan v. Toshiba America Information Systems, Inc.*, No. BC327273 (Los Angeles Sup. Ct.): Class counsel in a defective product/breach of warranty action concerning laptop computers. Settlement provided the class with a collective award valued at approximately $45,000,000.

**General Consumer Protection Class Actions**: We have successfully prosecuted countless class action suits against health clubs, dating agencies, phone companies, debt collectors, and other businesses on behalf of consumers.

**Representative Settlements:**

- *Pulcini v. Bally Total Fitness Corp.*, No. 05 CH 10649 (Cir. Ct. Cook County, IL): Co-lead counsel in four class action lawsuits brought against two health clubs and three debt collection companies. A global settlement provided the class with over $40,000,000 in benefits, including cash payments, debt relief, and free health club services.

- *Kozubik v. Capital Fitness, Inc.*, 04 CH 627 (Cir. Ct. Cook County, IL): Co-lead counsel in state-wide suit against a leading health club chain, which settled in 2004, providing the over 150,000 class members with between $11,000,000 and $14,000,000 in benefits, consisting of cash refunds, full debt relief, and months of free health club membership.

- *Kim v. Riscuity*, No. 06 C 01585 (N.D. Ill): Co-lead counsel in suit against a debt collection company accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with full debt relief and return of all money collected.

- *Jones v. TrueLogic Financial Corp.*, No. 05 C 5937 (N.D. Ill): Co-lead counsel in suit against two debt collectors accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with approximately $2,000,000 in debt relief.

- *Chancer v. Princess Cruises*, No. BC 115472 (Los Angeles Sup. Ct.): Co-lead counsel in class action lawsuit challenging a cruise line's deceptive "low price guarantee" as a consumer fraud class action. The settlement provided the class with a collective award valued at several millions of dollars.

- *Fertelmeyster v. Match.com*, No. 02 CH 11534 (Cir. Ct. Cook County, IL): Co-lead counsel in a state-wide class action suit brought under Illinois consumer protection statutes. The settlement provided the class with a collective award with a face value in excess of $3,000,000.

- *Cioe v. Yahoo!, Inc.*, No. 02 CH 21458 (Cir. Ct. Cook County, IL): Co-lead counsel in a state-wide class action suit brought under state consumer protection statutes. The settlement provided the class with a collective award with a face value between $1,600,000 and $4,800,000.

- *Cioe v. Lycos,* No. 02 CH 21456 (Cir. Ct. Cook County, IL): Co-lead counsel in a state-wide class action suit settled under state consumer protection statutes.

- *Gavrilovic v. Vintacom Media Group, Inc.,* No. 04 CH 11342 (Cir. Ct. Cook County, IL): Co-lead counsel in a state-wide class action suit settled under state consumer protection statutes.

- *McArthur v. Spring Street Networks,* 100766/2004 (New York County, NY): Co-lead counsel in a nationwide class action suit settled under New York consumer protection statutes.

- *California Reconveyance Cases*: Part of a team of attorneys who settled a series of state court class action cases under California's Reconveyance Statute. Cases settled for a collective amount of over $10,000,0000.

**Insurance Class Actions**: We have prosecuted and settled multi-million dollar suits against J.C. Penney Life Insurance for allegedly illegally denying life insurance benefits under an unenforceable policy exclusion and against a Wisconsin insurance company for terminating the health insurance policies of groups of self-insureds.

**Representative Settlements:**

- *Holloway v. J.C. Penney*, No. 97 C 4555, (N.D. Ill.): One of the primary attorneys in a multi-state class action suit alleging that the defendant illegally denied life insurance benefits to the class. The case settled in or around December of 2000, resulting in a multi-million dollar cash award to the class.

- *Ramlow v. Family Health Plan* (Wisc. Cir. Ct., WI): Co-lead counsel in a class action suit challenging defendant's termination of health insurance to groups of self-insureds. The plaintiff won a temporary injunction, which was sustained on appeal, prohibiting such termination and eventually settled the case ensuring that each class member would remain insured.

**Securities Class Actions**: We have successfully prosecuted securities class actions against companies such as Command Systems and Loch Harris on behalf of shareholders.

**Representative Settlements:**

- *Stassi et al. v. Loch Harris et al.*, No. GN 200180 (TX): Lead counsel in derivative action on behalf of technology development company that successfully obtained dissolution of corporation and distribution of assets to shareholders.

- *In re Command Systems*, Case No. 98-cv-3279 (S.D.N.Y.): Lead counsel in securities class action against technology company in which participating shareholders recovered over 80% of their losses.

**Privacy Class Actions**: We have litigated numerous class actions against Facebook, Sears, TD Ameritrade, and others involving the failure to protect customers' private information, some resulting from actual security breaches.

**Representative Settlements:**

- *In re Sony BMG CD Technologies*, No. 05-cv-0575 (S.D.N.Y.): Co-lead counsel in case that resulted in settlement correcting risk of harm to

computer users caused by Digital Rights Management on music CD's. Settlement included replacement of all affected music CD's and an award of additional music CD's to class members.

- *Wormley v. GeoCities*, No. 196032 (Los Angeles Sup. Ct.): Class Counsel in consumer class action for privacy violations that is believed to be the first Internet privacy case to recover a benefit for impacted class members.

**Mass/Class Tort Cases**: Our attorneys were part of a team of lawyers representing a group of public housing residents in a suit based upon contamination related injuries, a group of employees exposed to second hand smoke on a riverboat casino, and a class of individuals suing a hospital and national association of blood banks for failure to warn of risks related to blood transfusions.

**Representative Cases:**

- *Aaron v. Chicago Housing Authority,* 99 L 11738, (Cir. Ct. Cook County, IL): Part of team representing a group of public housing residents bringing suit over contamination-related injuries. Case settled on a mass basis for over $10,000,000.

- *Sturman v. Rush Presbyterian-St.Luke's Medical Center*, 2000 L 11069 (Cir. Ct. Cook County, IL): Part of team of attorneys in suit against hospital and national association of blood banks alleging failure to warn of risks of hepatits C infection as a result of past blood transfusions.

- *Januszewski v. Horseshoe Hammond*, No. 2:00CV352JM (N.D. Ind.): Part of team of attorneys in mass suit alleging that defendant riverboat casino caused injuries to its employees arising from exposure to second-hand smoke.

The firm's cases regularly receive attention from local, national, and international media. Our cases and attorneys have been reported in the Chicago Tribune, USA Today, the Wall Street Journal, the New York Times, the LA Times, by the Reuters and UPI news services, and BBC International. Our attorneys have appeared on numerous national television and radio programs, including ABC World News, CNN, Fox News, NPR, and CBS Radio, as well as television and radio programs outside of the United States. We have also been called upon to give congressional testimony and other assistance in hearings involving our cases.

## GENERAL COMMERCIAL LITIGATION

Our attorneys have handled a wide range of general commercial litigation matters, from partnership and business-to-business disputes, to litigation involving corporate takeovers. We have handled cases involving tens of thousands of dollars to "bet the company" cases involving up to hundreds of millions of dollars. Our attorneys have collectively tried hundreds of cases, as well as scores of arbitrations and mediations. All of our attorneys have regularly practiced in state and federal trial and appellate courts. The firm also has experience advising companies in

international matters arbitrated before the ICC, including a multi-billion dollar action against Shell Oil.

## E-DISCOVERY AND INFORMATION TECHNOLOGY

Led by nationally-recognized eDiscovery expert Steven Teppler, our firm has taken the lead on eDiscovery issues including data protection, information technology, document management and retrieval, loss or destruction of information, and authentication and admissibility issues uniquely inherent to computer generated information. This includes spoliation allegations arising from acts of unauthorized or illegal data manipulation or alteration.

## LEGAL AND POLITICAL CONSULTING

Legal and political consulting is an area of practice that sets KAMBEREDELSON apart from other law firms. The firm advises on governmental and consumer issues and has helped its clients formulate business and legislative strategies, revise contractual and advertising material, and implement consumer protection strategies more generally. Our clients range from small Internet start-ups, to brick and mortar companies, to one of the most trafficked Internet marketers, content and commerce firms in the country.

## OUR ATTORNEYS

**JAY EDELSON** is the founder and managing partner of KamberEdelson. He has been recognized as a leader in class actions, technology law, corporate compliance issues and consumer advocacy by his peers, the media, state and federal legislators, academia and courts throughout the country.

Jay has been appointed lead counsel in numerous state, federal, and international class actions, resulting in hundreds of millions of dollars for his clients. He is regularly asked to weigh in on federal and state legislation involving his cases. He testified to the U.S. Senate about the largest pet food recall in the country's history and is advising state and federal politicians on consumer issues relating to the recent federal bailouts, as well as technology issues, such as those involving mobile marketing. Jay also counsels companies on legal compliance and legislative issues in addition to handling all types of complex commercial litigation.

Jay has litigated class actions that have established precedent concerning the ownership rights of domain name registrants, the applicability of consumer protection statutes to Internet businesses, and the interpretation of numerous other state and federal statutes. He has also secured settlement in cases of first impression involving Facebook, Microsoft, AT&T and countless others.

In addition to technology based litigation, Jay has been involved in a number of high-profile "mass tort" class actions and product recall cases, including cases against Menu Foods for selling contaminated pet food, a $30 million class action settlement involving the Thomas the Tank toy train recall, and suits involving damages arising from second-hand smoke.

Adding to the diversity of his practice, Edelson also advises major labor unions and Hollywood financiers and serves as a consultant on several film, television, and radio deals.

In 2009, Jay was named one of the top 40 Illinois attorneys under 40 by the Chicago Daily Law Bulletin. In giving Jay that award, he was heralded for his history of bringing and winning landmark cases and for his "reputation for integrity" in the "rough and tumble class action arena." In the same award, he was called "one of the best in the country" when it "comes to legal strategy and execution." Also in 2009, Jay was included in the American Bar Association's "24 hours of Legal Rebels" program, where he was dubbed one of "the most creative minds in the legal profession" for his views of associate training and firm management.

Jay consults with the University of Chicago Medical Center and the Pritzker School of Medicine on Internet and legal/medical ethics issues. Jay is frequently asked to participate in legal seminars and discussions regarding the cases he is prosecuting. He has also appeared on dozens of television and radio programs to discuss his cases. He has taught classes on class action law at Northwestern Law School, John Marshall Law School, and DePaul Law School.

Jay is a graduate of Brandeis University and the University of Michigan Law School.

**MYLES MCGUIRE** is a partner at KAMBEREDELSON. His practice concentrates on consumer protection law, class actions, and legal and political consulting to technology companies. Prior to entering private practice, Myles spent several years operating an Internet advertising company, which was later sold, in addition to counseling high-tech companies on legal issues.

Since turning to plaintiffs' advocacy, Myles has had principle control over many nationwide and multi-state class actions. Drawing on his technological background, his specific area of emphasis is on emerging technology class actions, including those involving electronic commerce, cellular telephony and wireless media, among others. He has served in leadership positions in groundbreaking settlements involving Facebook, Verizon, Sprint, and T-Mobile.

Due to his diverse legal and business expertise, Myles has been asked by members of Congress to comment on proposed legislation in the mobile content industry and has worked with state regulatory bodies in related efforts.

Myles graduated from Marquette University Law School in 2000 and is admitted to practice in Wisconsin and Illinois. He is a member of the National Association of Consumer Advocates and the Chicago Bar Association.

**WILL HASELDEN** is a partner at KAMBEREDELSON. Will was admitted to the Florida Bar in 1995 and has practiced with both private firms and, most recently, the Florida Attorney General's Office. As an Assistant Attorney General, Will created the CyberFraud Section of that Office and spearheaded settlements with major wireless carriers, content providers, and billing aggregators related to unauthorized consumer billings for mobile content.

As part of this initiative, Will developed and forced the implementation of an industry-leading disclosure model for all advertisers of mobile content while also obtaining significant restitution for Florida consumers victimized by these deceptive billings.

Will is a graduate of St. Andrew's Presbyterian College in North Carolina and of the University of Memphis School of Law. He has long been active in community and local school-related organizations and has served in leadership roles in each.

Will is a frequent speaker at conferences related to internet marketing and will continue his enforcement efforts with the firm on behalf of consumers nationally. Will and his wife, Lori, have two children, both at the University of Florida.

**ALAN HIMELFARB** is a Partner at KAMBEREDELSON. He has advocated on behalf of plaintiffs for 15 years and specializes in complex litigation, contracts, high-technology fields, foreign licensing, and foreign technology transfers.

Alan's unique career path provides him with a wealth of experience and a distinct set of knowledge. Alan was admitted to the practice of law in California in July 1979. At the age of 23, he was the youngest member of the California Bar at the time, and within five years, became managing attorney of a law firm employing six attorneys and a support staff of ten. In 1988, he took a position overseas as a foreign legal consultant in Asia. In this capacity, he acted as chief negotiator for international sales/service/technical transfer agreements, mediated cross-cultural (Asian-Western) business and governmental interests, evaluated international business/marketing strategies for multinational corporations, drafted and negotiated a full range of international transactional agreements for Korean, European and American corporations and businessmen and marketed legal services to Korean domestic market and international community.

In 1992, Alan returned to Los Angeles in the capacity of a litigator, with an emphasis on plaintiff's work against banks and other financial institutions. He has been engaged in class action litigation since 1994, where he has secured hundreds of millions of dollars for his clients.

**MICHAEL J. MCMORROW** is a partner at KAMBEREDELSON. His practice focuses on commercial litigation and class action law, and his recent experience includes representation of consumer classes in litigation under the federal Telephone Consumer Protection Act, the California Unfair Competition Law, several common law claims, and additionally, representation of corporate clients in the mobile telephone content industry in commercial and trade secret litigation.

Mike is an experienced trial and appellate commercial litigator who has represented clients in court and at trial across a full spectrum of issues, including trade secret litigation, commercial contracts, airplane leasing, airport construction, automotive manufacturing, commercial and consumer lending, product liability, and has represented clients in heavily-regulated industries including insurance, defense contracting, health care and energy. Prior to joining the firm, Mike was Senior Counsel at Foley & Lardner LLP, practicing commercial and energy regulatory litigation.

Mike graduated magna cum laude from the University of Illinois College of Law in 2000, where he was Associate Editor of the UNIVERSITY OF ILLINOIS LAW REVIEW, a Harno Scholarship recipient, and President of the Prisoners' Rights Research Project. Mike received his B.A. in Political Science from Yale University in 1994. Mike has been a member of the Trial Bar for the Northern District of Illinois since 2005 and the Chicago Bar Association Judicial Evaluation Committee since 2003. His pro bono representations have included asylum applicants and prisoners' rights issues.

**STEVEN W. TEPPLER** is Senior Counsel to KAMBEREDELSON. Steven concentrates his practice on data protection and information technology law, including electronic discovery, loss or destruction of information, authentication and admissibility issues uniquely inherent to computer generated information, including spoliation issues arising from unauthorized or illegal data manipulation or alteration. He is the Co-Vice-Chair of the American Bar Association Information Security Committee as well as the Florida Bar's Professional Ethics Committee.

Steven has authored over a dozen articles relating to information technology law and routinely presents his work at conferences. Steven's recent publications include: *Spoliation in the Digital Universe, The SciTech Lawyer,* Science and Technology Law Section of the American Bar Association, Fall 2007; *Life After Sarbanes-Oxley – The Merger of Information Security and Accountability* (co-author), 45 JURIMETRICS J. 379 (2005); *Digital Signatures Are Not Enough* (co-author), Information Systems Security Association, January 2006; *State of Connecticut v. Swinton: A Discussion of the Basics of Digital Evidence Admissibility* (co-author), Georgia Bar Newsletter Technology Law Section, Spring 2005; *The Digital Signature Paradox* (co-author), IETF Information Workshop (The West Point Workshop) June 2005; *Observations on Electronic Service of Process in the South Carolina Court System,* e-filing Report, June 2005. Steven is also a contributing author to an American Bar Association book with the working title "Foundations of Digital Evidence" (publication expected March 2009).

Steven graduated from the Benjamin N. Cordozo School of Law in 1980 after earning his B.A., *summa cum laude,* from the City College of New York in 1977. Steven is admitted to the bars of New York, the District of Columbia and Florida.

**EVAN M. MEYERS** is Senior Counsel at KamberEdelson. Evan is an experienced trial and appellate litigator and has handled a broad range of complex litigation matters, including contract disputes, securities and consumer fraud, employment discrimination, insurance coverage, antitrust, shareholder and tax disputes, business torts and other matters. Evan has managed all aspects of the litigation process, including evaluation and strategic analysis, drafting pleadings in state and federal trial and appellate courts, taking and defending depositions, arguing motions, and representing clients in mediations and settlement conferences. He has also successfully tried cases in state court.

Prior to joining KamberEdelson, Evan worked at Drinker Biddle & Reath LLP, where he was an associate in the firm's commercial litigation practice group and represented a wide range of clients in federal and state courts, including manufacturers, insurance and financial services companies, government agencies, close corporations, hospitals, colleges and universities and not-for-profit entities.

Evan received his J.D., cum laude, from the University of Illinois College of Law in 2002, where he was an associate editor of the Elder Law Journal. Additionally, he served as a judicial extern with the Hon. Wayne R. Andersen of the U.S. District Court for the Northern District of Illinois. Evan received his bachelor's degree, with distinction, in political science from the University of Michigan in 1999.

**RYAN D. ANDREWS** is an associate at KAMBEREDELSON. He has been appointed class counsel in multiple complex high-stakes class actions, and actively involved in the litigation and settlement of class actions focused on the mobile content industry and Internet privacy.

Prior to joining the firm, Ryan engaged in all aspects of the prosecution and defense of claims on behalf of individual and corporate clients, including motion practice, arbitration, mediation, trial to verdict, and appeals.

Ryan received his J.D. with High Honors from the Chicago-Kent College of Law in 2005 and was named *Order of the Coif.* While in law school, Ryan was a Notes & Comments Editor for THE CHICAGO-KENT LAW REVIEW, as well as a teaching assistant for both Property Law and Legal Writing courses. Ryan externed for the Honorable Joan B. Gottschall in the Northern District of Illinois, and earned CALI awards for the highest grade in five classes.

Ryan graduated from the University of Michigan in 2002, earning his B.A., *with distinction*, in Political Science and Communications.

**MICHAEL J. ASCHENBRENER** is an associate at KAMBEREDELSON. Michael focuses his practice on prosecuting Internet privacy, consumer technology, and mobile content subscription fraud class actions. He also advises technology companies on the handling of Internet users' personal information.

Before entering the legal field, Michael spent several years working in the cell phone, computer, and Internet marketing industries where he gained significant insight into the business of emerging technology.

Prior to joining KAMBEREDELSON, Michael served as an Assistant Attorney General for the State of Minnesota. Upon entering the private sector, Michael was an associate for a large plaintiffs' consumer protection law firm where he prosecuted individual and class actions on behalf of consumers against mortgage companies and debt collectors. Michael successfully litigated multiple cases to judgment, securing redress for aggrieved consumers.

Michael graduated from Chicago-Kent College of Law, where he was an award-winning member of the Moot Court Honor Society, as well as Editor of the SEVENTH CIRCUIT REVIEW. He was published in a law journal during school and received a CALI Award for obtaining the highest grade in his Tax Procedure course.

Michael received his B.A. in Journalism from the University of Minnesota-Twin Cities in 2001.

**RAFEY S. BALABANIAN** is an associate at KAMBEREDELSON. Rafey focuses his practice on prosecuting consumer technology class actions as well as defending corporate clients in a variety of litigation settings.

Prior to joining the firm, Rafey was an associate attorney with a boutique Chicago law firm where he practiced commercial litigation. Rafey has represented individual and corporate clients ranging from real estate developers, hotels, insurance companies, lenders, shareholders and attorneys. Rafey has first chaired both jury and bench trials, engaged in extensive motion practice, litigated class action matters and acted as lead counsel in several mediations and

arbitrations.

Rafey received his J.D. from the DePaul University College of Law in 2005. While in law school, Rafey received a certificate in international and comparative law and earned the CALI award for the highest grade in advanced trial advocacy. Rafey received his B.A. in History, *with distinction*, from the University of Colorado – Boulder in 2002.

**STEVEN LEZELL** is an associate at KAMBEREDELSON and the firm's hiring attorney. Steven has successfully litigated and settled a number of consumer protection cases through trial, engaged in extensive motion practice, drafted appellate briefs, prosecuted class actions and participated in multi-session mediations.

Prior to joining the firm, Steven was a litigator at a Chicago boutique focusing on consumer protection matters, real estate disputes, fraudulent transfers in bankruptcy and the prosecution of white-knight mortgage fraud cases.

Steven received his J.D. from Chicago-Kent College of Law with High Honors, *Order of Coif*, while earning his certificate in litigation and alternative dispute resolution. During law school, he served as a Judicial Extern for the Honorable Ann C. Williams on the Seventh Circuit Court of Appeals and as President of the Student Bar Association. Steven also served as a Notes and Comments Editor for THE CHICAGO-KENT LAW REVIEW and represented Chicago-Kent at the National Sports Law Moot Court Competition in New Orleans in 2004. Steven was awarded the ABA-ALI Scholarship and Leadership Award for best representing the combination of leadership and scholarship in his graduating class and also received the Lowell H. Jacobson Memorial Scholarship, which is awarded competitively to a student from one of the law schools in the Seventh Circuit to recognize personal commitment and achievement.

Steven received his B.A. in Political Science, *with Distinction*, from the University of Michigan—Ann Arbor in 2002.

**LIZA DAVENPORT** is an associate at KAMBEREDELSON. Liza practices in the areas of consumer class action and civil defense, focusing on complex class action cases in the mobile content industry.

Prior to joining KamberEdelson, Liza engaged in the defense of claims on behalf of corporate clients as a summer associate in the litigation department at Arnstein & Lehr LLP, including claims involving real estate, bankruptcy, wills, products liability, and municipality law. She also assisted in the representation of plaintiffs' with claims filed in the Federal Vaccine Courts, as well as social security disability claims while interning at the Chicago-Kent Law Offices, Health Law Clinic.

Liza received her J.D. from Chicago-Kent College of Law in May 2009. While in law school, Ms. Davenport was awarded the Chicago-Kent Alumni Board Scholarship for demonstrating academic merit. Additionally she externed for the Honorable Arlander Keys, Federal Magistrate for the Northern District of Illinois.

Liza graduated with High Honor from Michigan State University, James Madison College of Public Affairs, in 2006, earning her B.A. in Political Theory and Constitutional Democracy. Ms.

Davenport was also a member of the Michigan State University Honors College.

**CHRISTOPHER L. DORE** is an associate at KamberEdelson. Chris focuses his practice on prosecuting consumer technology fraud, text-spam, and credit reduction class actions.

Chris graduated magna cum laude from The John Marshall Law School, where he served as the Executive Lead Articles for the Law Review, as well as a team member for the D.M. Harish International Moot Court Competition in Mumbai, India. His article, What to Do With Omar Khadr? Putting a Child Soldier on Trial: Questions of International Law, Juvenile Justice, and Moral Culpability appeared in the John Marshall Law Review. Throughout law school, Chris worked as a Legal Writing TA. He received a CALI Award for obtaining the highest grade in Voting and Election Law.

Before entering law school, Chris received his Masters degree in Legal Sociology, graduating magna cum laude from the International Institute for the Sociology of Law, located in Onati, Spain. Chris received his B.A. in Legal Sociology from the University of California, Santa Barbara.

**BENJAMIN H. RICHMAN** is an associate at KamberEdelson. Ben focuses his practice in the prosecution of consumer technology and other class actions, as well as general commercial litigation.

Ben received his J.D. from The John Marshall Law School in 2009, earning a Certificate in Trial Advocacy. During law school Ben served as Executive Student Publications Editor for The John Marshall Law Review and as a judicial extern for the Honorable John W. Darrah of the United States District Court for the Northern District of Illinois. Ben also acted as a teaching assistant in several torts courses and earned the CALI award for the highest course grade in Contracts II.

Ben graduated from Colorado State University in 2006, earning his B.S. in Psychology.

**IRINA SLAVINA** is an associate at KamberEdelson. As a Russian attorney, Irina obtained her LL.M degree in International and Comparative Law, with High Honors, from Chicago-Kent College of Law in 2003. Since that time Irina has had a unique legal career in the United States that started in a boutique law office in Chicago and progressed to the legal department of a major gaming and entertainment company on the east coast.

While working in-house with General Counsel, Irina gained extensive experience in drafting and negotiating company contracts and addressing the day-to-day legal inquiries of management. Irina handled patrons' liability claims, worked with state and local government officials in obtaining and renewing company licenses, and assisted with all aspects of corporate governance and compliance.

Irina earned her J.D. from Chicago-Kent College of Law with High Honors, Order of Coif, in 2009. While in law school, Irina represented Chicago-Kent in the McGee National Civil Rights Moot Court Competition. Irina was also a member of the Chicago-Kent Law Review, and her student note is scheduled to be published in the December 2009 issue. Irina externed for the Honorable Susan E. Cox in the Northern District of Illinois, and earned the CALI award for obtaining the highest grade in Constitutional Law, Evidence, and Legal Writing III courses.