IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| WILLIAM JEPSEN, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) |
| *Plaintiff*, | ) ) No. 08-CV-5508 |
| v. | ) ) Honorable Wayne R. Andersen |
| CLUB TEXTING, INC., a New York corporation, JOONBUG PRODUCTIONS, INC., a New York corporation, | ) ) ) ) |
| *Defendants*. | ) ) |

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF ATTORNEYS' FEES AND PLAINTIFF'S INCENTIVE AWARD**

The ubiquity of cellular telephones and the ever-increasing federal regulation of solicitations to consumers through telephones and email have led marketers to look toward alternative means to reach their intended audiences. One such medium is text message advertising. This class action concerns Defendants' alleged transmission of unsolicited text messages to consumers' cellular phone devices, which advertised certain Chicagoland nightclubs' promotions and events. Plaintiff, having received a text message ad, filed the class action suit against Defendants on September 25, 2008, alleging that their conduct violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*.

Despite being intensely litigated at the outset, the Parties agreed to attempt to reach a resolution with the assistance of the Court relatively early in the litigation process. The Parties and their counsel participated in a lengthy settlement conference with the Honorable Michael T. Mason on October 14, 2009, which resulted in an agreement in principal between the Parties as to the substantive terms of the Agreement. Continued negotiations ensued between the Parties prior to finalizing the terms of the Agreement and the notice plan, which were preliminary

approved by the Court's order of January 22, 2010. (Dkt. No. 60; Stipulation of Settlement, a true and accurate copy of which is attached as Exhibit A.)

The broad Notice Plan approved by the Court has been effectuated, there have been no exclusions or opt-outs, and the deadline for the submission of requests for exclusion and objections has expired. Plaintiff Jepsen now seeks final approval of the settlement, and given the overwhelmingly favorable reaction of the class, such approval is warranted. The settlement has achieved exceptional results for the class, providing both substantial injunctive relief to prevent future transmission of allegedly unsolicited text message ads and individual monetary relief of $67.50 to each class member who files a valid claim before June 14, 2010. Although the successful results for the class, their favorable reaction to the settlement, and the inherent risk attendant in continued litigation of a complex class action each favor final approval, the Court need not rule on a blank slate in deciding the fairness, reasonableness, and adequacy of this agreement as it is predicated on similar agreements approved by this Court and others. (*See Weinstein v. The Timberland Co. et al*, 06 C 0484 (N.D. Ill.); *Shen v. Distributive Networks*, 06 C 4403 (N.D. Ill.)).

As a result of the strength of the settlement and the unanimous support behind it, the Class Representative respectfully requests the Court grant final approval of the Agreement dismissing the Released Claims with Prejudice, and awarding the agreed-upon attorneys' fees and incentive award.

I.  **NATURE OF THE LITIGATION**

1.  ***Plaintiff's TCPA Claim & The Litigation.*** On September 25, 2008, Plaintiff initiated this class action against Club Texting and JoonBug, alleging that the Defendants' transmission of unsolicited text message advertisements to consumers' cellular phones violated

the TCPA, 47 U.S.C. § 227, *et seq*. (Dkt. No. 1.) Plaintiff's Complaint sought injunctive relief to cease the transmission of future unsolicited text message ads, and actual and statutory monetary damages to the recipients of the ads. (*Id*.)

From the outset, this matter was vigorously litigated, with Plaintiff seeking leave to conduct early discovery, Defendant serving Plaintiff with a Fed. R. Civ. P. 68 Offer of Judgment, Plaintiff moving for Class Certification, and one Defendant answering while the other moved for dismissal pursuant to Rule 12(b)(6). (*See* Dkt. Nos. 15, 17, 31, 34, and 36.)

    2.  ***The Settlement Conference and the Agreement.*** After actively litigating the case the United States Court of Appeals for the Ninth Circuit issued its opinion in *Satterfield v. Simon & Schuster,* 569 F.3d 946 (9th Cir. 2009), and the Parties agreed to attempt to resolve the dispute through a Court supervised settlement conference. (*See* Dkt. Nos. 43, 45.) On October 14, 2009, Plaintiff Jepsen, Shahriyar Neman of Club Texting, and their respective counsel participated in a settlement conference with the Hon. Michael T. Mason. (*See* Declaration of Ryan D. Andrews ¶ 2, a true and accurate copy of which is attached as Exhibit B.) At the settlement conference, with the assistance of Judge Mason, the Parties were able to reach an agreement in principal as to the key terms of the settlement. (Dkt. No. 49.) Thereafter, the Parties further negotiated and exchanged numerous drafts to finalize the terms of the Agreement. (Andrews Decl. ¶ 2.) The Agreement provides substantial injunctive relief to the class that is designed to ensure Defendants obtain proper consent from consumers prior to sending text messages to them. The Agreement also provides each class member that received an allegedly unauthorized test message $67.50 if they file a valid claim form by June 14, 2010. (*See* Ex. A.) On January 22, 2010, the Court granted preliminary approval of the Agreement and approved the proposed Notice Plain. (Dkt. No. 60.)

3

II. **TERMS OF THE SETTLEMENT**

The key terms of the Agreement are as follows:

1.  *Class Definition:* The "Settlement Class" is defined as all Persons residing in the State of Illinois who, from September 25, 2004, until January 22, 2010, received a Fly Society Text Message transmitted by Club Texting and/or its affiliates that was sent without such Person's prior express consent. (Ex. A ¶ 1.27.) Fly Society Text Messages are those allegedly unsolicited text message advertisements sent by a certain nightclub promoter using the name "Fly Society" (or similar name) that used the business services of Club Texting. (Ex. A ¶ 1.15.)

2.  *Injunctive Relief.* Club Texting has agreed to: (1) adhere to the Consumer Best Practices Guidelines promulgated by the Mobile Marketing Association ("MMA"); (2) require all users of its text message transmission services to represent they have obtained prior express consent from each recipient before such users are able to utilize Club Texting's services; (3) require that first-time users first view and agree to comply with all of Club Texting's terms and conditions, which is demonstrated by entering an access code provided by Club Texting; and (4) require that each user of its text messaging services include opt-out instructions in conformity with the MMA's guidelines to each recipient of a text message, *e.g.* texting the word "STOP" in a reply text message. (Ex. A ¶ 2.1.)

3.  *Settlement Payments.*

    A. **Class Member Payments.** Club Texting agrees to pay $67.50 to each class member who submits a valid claim form prior to June 14, 2010. (Ex. A ¶ 2.2(a).) To the extent that a check issued to a class member is not cashed within 90 days of issuance, such funds, subject to Court approval, shall be directed to Charity: Water, a section 501(c)(3) non-profit

4

organization that provides clean, safe drinking water to people in developing nations. (Ex. A ¶ 2.2(b).)

    **B.**   **Payment of Notice and Administrative Expenses:** Club Texting has paid and will continue to pay all claims administration expenses, including all expenses incurred by the settlement administrator, Strategic Claims Services ("SCS") for performing services required by the Agreement. (Ex. A ¶¶ 1.4, 2.2(d).)

    **C.**   **Payment of the Incentive Award:** Club Texting has agreed, subject to Court approval, to pay the Class Representative William Jepsen an incentive award of $5,000, in addition to any award he will receive through the Agreement. (Ex. A ¶ 8.3.)

    **D.**   **Payment of Attorneys' Fees And Expenses:** Club Texting agrees, subject to Court approval, to pay an amount of up to $60,000 in attorneys' fees and expenses, the agreed upon amount with the aid of Judge Mason. Club Texting agrees that this amount is fair and reasonable, and that it will not oppose Class Counsel's application for such amount. (Ex. A ¶¶ 8.1-8.2.)

  4. *The Release.* Through the release provided in the Agreement, Plaintiff and the Settlement Class shall be deemed to have fully, finally, and forever released all claims relating to all unsolicited text messages transmitted on behalf of Fly Society against the Defendants and their affiliates. (Ex. A; ¶¶ 3.1, 1.22-1.24.)

**III.**  **THE SETTLEMENT WARRANTS FINAL APPROVAL**

  Under Federal Rule of Civil Procedure 23(e), "claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). In cases where the settlement "would bind class members, the court may approve [the settlement] only after a hearing and finding that it is fair, reasonable, and adequate." Fed R. Civ. P. 23(e)(2). "Federal

5

courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (citing *E.E.O.C. v. Hiram Walker & Sons, Inc.,* 786 F.2d 884, 888-89 (7th Cir. 1985)). Thus, the Seventh Circuit has found that a District Court's inquiry as to whether to grant approval "is limited to [the consideration of] whether the proposed settlement is lawful, fair, reasonable and adequate." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.,* 309 F.3d 978, 987 (7th Cir. 2002) (citing *Isby*, 75 F.3d at 1196).

To properly evaluate the fairness of a settlement, a district court must consider the following five factors:

> [1] the strength of plaintiffs' case compared to the amount of defendants' settlement offer, [2] an assessment of the likely complexity, length and expense of the litigation, [3] an evaluation of the amount of opposition to settlement among affected parties, [4] the opinion of competent counsel, and [5] the stage of the proceedings and amount of discovery completed at the time of settlement.

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (internal citations omitted) (citing *Isby,* 75 F.3d at 1199); *accord In re JPMorgan Chase & Co. Sec. Litig.,* No. 06 C 4674, 2009 WL 537062, at *4 (N.D. Ill. Mar. 3, 2009). Each factor here militates in favor of final approval.

### 1. *The Strength of the Plaintiff's Case Compared to Settlement Weighs in Favor of Granting Approval.*

Courts have found that the first factor is the "most important factor relevant to the fairness of a class action settlement." *Synfuel*, 463 F.3d at 653 (quoting *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979)). In considering the strength of the Plaintiff's case, the Court should quantify "the net expected value of continued litigation to the class," by estimating "the range of possible outcomes." *In re JPMorgan Chase & Co. Sec. Litig.,* MDL No. 1783, 2009 WL 537062, at *4 (providing the court with "ballpark figures"); *accord Synfuel,* 463 F.3d at 653. In weighing this factor, the Court "should consider

the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005) (citing *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993)).

Recent case law and the Federal Communications Commission's interpretation of the TCPA strongly support Plaintiff's claim that the transmission of the text message advertisements at issue is prohibited by 47 U.S.C. § 227(b)(1)(A)(iii). *See Lozano v. Twentieth Century Fox Film Corp.,* No. 09-cv-6344, 2010 WL 1197884, at *8 (N.D. Ill. Mar. 23, 2010) ("[T]he Court agrees with the FCC's interpretation that § 227 of the TCPA applies to text messages."); *see also Abbas v. Selling Source, LLC,* No. 09 CV 3413, 2009 WL 4884471, at *7 (N.D. Ill. Dec. 14, 2009) ("The court concludes that an SMS message is a 'call' within the meaning of the TCPA."); *see also Satterfield,* 569 F.3d at 952 ("[W]e hold that a text message is a 'call' within the meaning of the TCPA.").[1] The TCPA allows for the receipt of "$500 in damages for each such violation[.]" 47 U.S.C. § 227(b)(3)(B). Thus, in the absence of proof of willfulness, the upper limit of damages from a favorable verdict would be $500 in statutory damages per text message.

In the absence of settlement, however, Plaintiff is cognizant that the "range of possible outcomes" includes a number of unfavorable outcomes. Continued litigation in this case could result in a finding from this Court or the Seventh Circuit that the TCPA does not apply to the text message ads at issue, which would provide no relief to the class. Further, Defendants raised several legal defenses and factual hurdles during the settlement conference with Judge Mason, any of which, if successful, could result in no relief to the class. (Andrews Decl. ¶ 3.) Finally,

---

[1] *See also In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 14115, 165, 2003 WL 21517853 (2003) (finding that the TCPA prohibition "encompasses both voice calls and text calls, … [*e.g.,*] short message service (SMS) calls").

7

should Plaintiff overcome each of these hurdles it is unlikely that Defendants could financially sustain a judgment for the full statutory damages at issue in this case. (Andrews Decl. ¶ 3.)

Although Plaintiff believes that his TCPA claim is strong on the merits, given the potential for unfavorable outcomes in the case, the propitious amount of beneficial relief provided by the Agreement here weighs heavily in favor of granting final approval of the settlement. *See Lipuma*, 406 F. Supp. 2d at 1323 ("[I]t has been held proper to take the bird in hand instead of a prospective flock in the bush.") The Agreement provides significant injunctive relief to the class to prevent the future transmission of unsolicited text message advertisements to consumers and affords $67.50 to each class member who submits a valid claim form. Weighing the strength of Plaintiff's claim and potential risks involved with continued litigation, against the exceptional beneficial results for the class provided by the Agreement, this first factor strongly supports final approval of the settlement.

    2.    *The Likelihood of An Increase in the Complexity, Length, And Expense of Continued Litigation Validates the Approval of the Settlement.*

Final approval of a settlement is favored where "continued litigation would require resolution of complex issues at considerable expense and would absorb many days of trial time." *In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000) (finding that settlement is favored where further litigation would require additional written discovery, depositions and expert discovery, and where appellate practice is likely to result); *accord Isby,* 75 F.3d at 1199.

Continued litigation in this case would most certainly result in an increase in the complexity of the issues to resolve, the duration of the lawsuit, and an increase in the expenses incurred by both parties. This class action involves relatively new legal issues regarding the TCPA that have yet to be presented to the Seventh Circuit Court of Appeals. (Andrews Decl. ¶

8

4.) In light of such complexity and the amount of injunctive and monetary relief at issue, the defeated party is likely to appeal, which will further delay the date of resolution. (*Id.*) All of the Parties will incur additional expenses if the settlement is not approved including the costs of further discovery, filing and defending further pre-trial motions, and the great expense of conducting a class action trial. Evidence and witnesses from across the country would have to be convened, especially because Defendants are New York corporations and class members reside in Illinois. Thus, factor two weighs in favor of approving the settlement.

3. *There Has Been No Opposition to the Settlement.*

The lack of objectors challenging the settlement favors a finding that the settlement is "fair and reasonable." *Am. Civil Liberties Union v. U.S. Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 819 (N.D. Ill. 2002). The fact that not one class member opted-out nor filed an objection to the settlement, is "strong circumstantial evidence favoring settlement." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020-21. Here, not one person has objected to or opted-out of the Agreement, and the deadline for filing exclusions and objections to the settlement was March 29, 2010. (*See* Declaration of Paul Mulholland Decl. ¶ 8, a true and accurate copy of which is attached as Exhibit C.) In addition, Defendants provided proper notice of the Agreement to the appropriate state and federal officials pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715 and no comments or opposition from those governmental entities was received. (Andrews Decl. ¶ 7.) This lack of opposition further supports granting final approval of the settlement.

4. *The Opinion Of Competent Counsel Favors Approval.*

Courts are entitled to rely on the opinion of competent Class Counsel that the settlement is fair, reasonable and adequate, where Class Counsel are qualified, and where discovery and

settlement negotiations are extensive and thorough. *See Isby*, 75 F.3d at 1200; *see also Hispanics United v. Vill. of Addison*, 988 F. Supp. 1130, 1150 n. 6 (N.D. Ill. 1997) (noting that a "strong initial presumption of fairness attaches" where the settlement is "the result of arm's length negotiations," and where plaintiffs' counsel are "experienced and have engaged in adequate discovery").

Class Counsel have extensive knowledge and experience in litigating consumer class actions and were pitted against highly experienced defense counsel who promised to continue to mount a formidable defense. (*See* Andrews Decl. ¶ 13.) Furthermore, the Agreement was finalized only after extensive arm's length negotiations and participation in a thorough settlement conference with Judge Mason and after Plaintiff was given access to sufficient informal discovery to confirm the representations made in reaching the agreement in principal. (Andrews Decl. ¶¶ 2, 5.) Given the unlikelihood that Defendants' could financially sustain a complete judgment and are offering substantial injunctive relief that will prevent the occurrence of the alleged conduct, the settlement is exceptionally favorable. Class Counsel believe that the proposed settlement is exceptionally favorable for the class members, by providing the immediate relief of $67.50 to each class member and substantial injunctive relief that will prevent the occurrence to the alleged conduct moving forward. (Andrews Decl. ¶¶ 3, 6.)

     **5.**    ***The Stage of The Proceedings And The Amount of Discovery Completed Weigh in Favor of Final Approval of the Settlement.***

Approval of a settlement is proper where "discovery and investigation conducted by class counsel prior to entering into settlement negotiations was 'extensive and thorough.'" *Isby*, 75 F.3d at 1199. *accord Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001).[2] Prior to

---

[2] In fact, Courts "have often seen cases which were 'over discovered.' In addition to wasting the time of [the] Court, the parties and their attorneys, it often adds unnecessarily to the financial burden of litigation and may often serve as a vehicle to harass a party. Discovery in its most

engaging in serious settlement discussions, the Parties were able to explore the strengths and weaknesses of their respective positions through briefing on a motion to conduct discovery, a motion to dismiss, and a motion for class certification. (*See* Dkt. Nos. 17, 34, 36.) Further, the settlement in this case was finalized only after extensive investigation into the claims and defenses, and where the Parties had the necessary information to negotiate effectively at the settlement conference, and to evaluate a fair settlement amount. (Andrews Decl. ¶¶ 2, 5.) Accordingly the final factor is satisfied and each of the five *Synfuel* factors support a finding that the settlement is fair, reasonable, and adequate making final approval of the settlement warranted.

### IV. THE NOTICE PLAN COMPORTS WITH DUE PROCESS

Rule 23 requires the class receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 , 94 S. Ct. 2140, 2150 (1974); *see also Mangone*, 206 F.R.D. at 233 ("[A]ll that is required by F.R.C.P. 23 is that Notice be provided to the class by the most practicable means available[.]"). "Neither Rule 23 nor due process require 'receipt of actual notice by all class members;' rather, 'notice should be mailed to the last known addresses of those who can be indentified and publication used to notify the others….'" *Mangone*, 206 F.R.D. at 231-322; *see also Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985) (noting that "Rule 23 does not require defendants to exhaust every conceivable method of identification"); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (reasoning that the "World Wide Web is an increasingly important method of communication, and . . . an increasingly important substitute

---

efficient utilization should be totally extra-judicial…. Being an extra judicial process, informality in the discovery of information is desired." *Lipuma*, 406 F. Supp. 2d at 1324.

for newspapers"). Here, the Court-approved notice complied with Rule 23 and due process.

To ensure proper notice, the parties retained Strategic Claims Services ("SCS"), a nationally recognized class action administration firm specializing in managing, planning, implementing and administering class action litigations in a cost-effective and efficient manner. (*See* Mulholland Decl. ¶ 2; www.strategicclaims.net.). SCS timely implemented the Court-approved the four-part Notice Plan, which included direct notice, publication notice, a website notice, and a press release, was designed to reach as many members of the class as possible. (Mulholland Decl. ¶¶ 3-7; Dkt. No. 60 ¶¶ 8-18.) To provide the direct notice, Club Texting turned over to Class Counsel all documents in its possession containing email and U.S. Mail addresses. (Andrews Decl. ¶ 8; Dkt. No. 60. ¶ 9.) Class Counsel reviewed the documents, pulled out all email and U.S. Mail addresses for the class members, and thereafter, SCS sent a notice and a claim form to those class members via email and/or U.S. Mail. (Andrews Decl. ¶ 8; Mulholland Decl. ¶ 1, 3.)

Three additional forms of Court-approved notice supplemented the direct notice. First, on January 29, 2010, SCS erected, maintained, and administered the settlement website at www.flysocietyclassactionsettlement.com, which served as the long-form notice and allowed for the submission of on-line claims. (*See* Mulholland Decl. ¶¶ 3, 7; Andrews Decl. ¶ 9.) In addition, an eighth-page notice was published in the front section of the *Chicago Reader* on February 17, 2010. (Mulholland Decl. ¶¶ 3, 5.) Finally, Class Counsel issued the Court approved and agreed upon Press Release on February 26, 2010 through PR News Channel, which posts full-text news releases to major internet portals, search engines, financial services, as well as being carried by major syndicators, newspapers, and other targeted websites. (Andrews Decl. ¶ 10.)

Each of the required notices directed class members to the Court-approved "long form" notice, contained a toll-free number to contact Class Counsel, and together comports with the requirements of Due Process and Rule 23.

V. **THE AGREED-UPON ATTORNEYS' FEES & INCENTIVE AWARD ARE REASONABLE AND SHOULD BE APPROVED**

Rule 23(h) provides in pertinent part, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Although fee awards in class actions typically arise pursuant to a fee-shifting statute or the creation of a common fund for the benefit of the class, it is also proper for Defendant to contractually agree through the settlement to the payment of reasonable attorneys' fees to Class Counsel. *Dutchak v. Cen. States, SE and SW*, 932 F.2d 591, 594-95 (7th Cir. 1991) (affirming application of the lodestar method to determine fees arising from settlement). Here the settlement does not create a common fund for the class nor is based on a statute shifting fees, but provides relief to each class member who files a claim and includes a fee amount negotiated with Judge Mason based on lodestar figures that Defendants' will pay, subject to Court approval, a reasonable fee not to exceed $60,000. (Ex. A ¶ 8.1; Andrews Decl. ¶ 11.) Thus, the Court should use the lodestar approach to analyze whether the agreed-upon fees are reasonable.

To determine the reasonableness of attorneys' fees under the lodestar method, the first step is to "multiply[] a reasonable hourly rate by the number of hours reasonably expended." *Gastineau v. Wright,* 592 F.3d 747, 748 (7th Cir. 2010) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433-37, 103 S. Ct. 1933 (1983)). A reasonable hourly rate should be in line with the prevailing rate in the "community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Jeffboat, LLC v. Director, Office of Workers' Comp. Programs*, 553

13

F.3d 487, 489 (7th Cir. 2009); *see also Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003) (finding the attorney's actual billing rate for comparable work is presumptively appropriate).[3]

Class Counsel's adjusted-lodestar[4] in the instant case is reflected in the following chart:

| ATTORNEY (position) | YEARS OF PRACTICE | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| M. McGuire (partner) | 10 years | 23.6 | $495 | $11,682.00 |
| R. Andrews (associate) | 5 years | 150.7 | $380 | $57,266.00 |
| R. Balabanian (associate) | 5 years | 18 | $380 | $6,840.00 |
| B. Richman (associate) | 1 year | 1.2 | $290 | $348.00 |
| S. Davenport (associate) | 1 year | 34.3 | $290 | $9,947.00 |
| J. Ochoa (law clerk) | N/A | 4.5 | $210 | $945.00 |
| **TOTAL** | | **232.3 hrs** | | **$87,028.00** |

(Andrews Decl. ¶ 14.)

The hourly rates utilized by Edelson McGuire, LLC attorneys and legal staff are comparable to rates charged by attorneys with similar experience, skill and reputation, for similar services in the Chicago legal market and comparable markets nationwide. (Andrews Decl. ¶¶ 15-16.) The hourly rates listed in the chart above are the actual billing rates for the respective attorneys that they charge to hourly clients, and, therefore, yield a presumption of appropriateness. *See, e.g., Denius,* 330 F.3d at 930. Further, Edelson McGuire's then-current hourly rates have been approved as reasonable by a number state and federal courts. (Andrews Decl. ¶¶ 14-15.) In addition to the $87,028.00 in time, Class Counsel have incurred costs and

---

[3] Oftentimes, the base lodestar is adjusted using a multiplier to take into account various factors in the litigation that affect the reasonableness of the requested fees. *See, e.g., Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998); *see, e.g., Skelton v. Gen. Motors Corp.,* 860 F.2d 250, 255 (7th Cir. 1988). Here, Counsel Counsel's base lodestar exceeds the amount of agreed-upon fees.
[4] Prior to submission, Class Counsel reviewed the hours expended by the attorneys and staff of Edelson McGuire and reduced any hours deemed even remotely duplicative or excessive. (Andrews Decl. ¶ 12.)

out-of-pocket expenses litigating this matter in the amount of $650.00, for a total of $87,678.00. (*Id*.) Accordingly, Class Counsel's unadjusted base lodestar, demonstrates the reasonableness of the $60,000 agreed-upon fee award.

### 2. *The Incentive Award to the Class Representative is Reasonable and Should be Approved.*

Because a named plaintiff is essential to any class action, "[i]ncentive awards are justified when necessary to induce individuals to become named representatives." *In re Synthroid Marketing Litig.,* 264 F.3d 712, 722 (7th Cir. 2001). In deciding whether an incentive award is warranted, courts look to: (1) "the actions the plaintiff has taken to protect the interests of the class"; (2) "the degree to which the class has benefitted from those actions"; and (3) "the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook*, 142 F.3d at 1016. These factors are readily satisfied, in the instant action, because the class benefitted significantly from Mr. Jepsen's active involvement as the Class Representative.

Mr. Jepsen's efforts and contributions to the litigation include assisting Class Counsel for in the investigation and implementation of his TCPA claim. Furthermore, Mr. Jepsen took time off from his employment to personally attend and participate in the settlement conference, which resulted in the initial agreement between the parties. The agreed-upon incentive award of $5,000 is therefore reasonable and should be approved.

### VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that the Court grant final approval to the Agreement and enter the proposed order submitted concurrently with this Motion.

Dated: April 23, 2010

Respectfully submitted,

WILLIAM JEPSEN,
individually and on behalf of a class of similarly situated individuals,

  /s/ Ryan D. Andrews

    Ryan D. Andrews
    Rafey S. Balabanian
    Sarah E. Davenport
    EDELSON MCGUIRE, LLC
    350 North LaSalle, Suite 1300
    Chicago, Illinois 60654